# Illinois Official Reports

## Appellate Court

---

### *People v. Maldonado*, 2015 IL App (1st) 131874

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LOUIS MALDONADO, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-13-1874 |
| Filed<br>Rehearing denied | June 30, 2015<br>August 10, 2015 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-CR-13472; the Hon. Michael Brown, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier and Kieran M. Wiberg, both of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Bianca R. Pucci, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE PIERCE delivered the judgment of the court, with opinion.<br>Justices Neville and Liu concurred in the judgment and opinion. |

**OPINION**

¶ 1     Following a bench trial, defendant Louis Maldonado was convicted of three counts of unlawful use or possession of ammunition by a felon (UUWF) (720 ILCS 5/24-1.1 (West 2010)) and possession of a controlled substance with intent to deliver 1 gram or more but less than 15 grams of heroin (720 ILCS 570/401(c)(1) (West 2010)). Defendant was sentenced to three years of intensive drug probation. On appeal, defendant argues that the State failed to prove him guilty of UUWF and possession of heroin with intent to deliver beyond a reasonable doubt; the trial court erred when it denied defendant's motion to disclose the identity of the State's informant; multiple errors by the trial court prevented important evidence from being presented that caused defendant to be convicted on evidence that did not exist; and, he was erroneously assessed a $750 controlled substance emergency response fine that must be vacated. For the following reasons, we reverse.

¶ 2                                    BACKGROUND

¶ 3     Acting on a tip from an unnamed informant, the Chicago police department obtained and executed a search warrant for the premises located at 4459 West Washington Boulevard on July 13, 2011. No one was home before, during or after the search was conducted. Police searched the two-story, three-bedroom home and found several boxes of ammunition, a small amount of heroin hidden in a statue and a box containing a scale and $1,500 cash.

¶ 4     Officer Angelo Monaco testified that he participated in the execution of the search warrant at the premises located at 4459 West Washington Boulevard, a single-family, two-story home with bedrooms on the second floor and a living room and kitchen on the first floor. He searched the south bedroom on the second floor. Next to the bed, on a nightstand, he found a small statue that was closed. Inside the statue was a plastic bag containing suspected heroin. Under the bed he also found a box containing some money and an electronic scale. Officer Monaco testified that scales are sometimes used for weighing narcotics. There was no cross-examination.

¶ 5     Officer Chad Behrend testified that he also participated in the execution of a search warrant at 4459 West Washington Boulevard. The officers determined no one was in the home at the time of the search. On top of a dresser in the second-floor middle bedroom he found a white box containing two boxes of ammunition. One box contained .38-special ammunition and the other contained 9-millimeter ammunition. Also on top of the dresser were women's wigs and other women's items like lotion and perfume. He did not find any men's items or men's clothing on the dresser.

¶ 6     Sergeant Reina testified that he was the supervisor during the search of 4459 West Washington Boulevard. He searched the kitchen and found a box of .22-caliber ammunition in a drawer in the center island. He also counted the money that Officer Monaco found under the bed and concluded that it was $1,500. There was no cross-examination.

¶ 7     Officer Wayne Franco testified to the inventory process for the items found on the premises. The parties stipulated that Officer Cilio recovered "three pieces of proof of residency" from the premises: two pieces of mail and a delivery receipt. All three pieces bore the defendant's name and were addressed to 4459 West Washington Boulevard. One unopened envelope was addressed: Louis Maldonado, 4459 W. Washington. This envelope appeared to be "some kind of mass marketing material." The second unopened envelope was addressed:

Louis Maldonado, Wilner Jackson, 4459 W. Washington. This envelope appeared to be sent by ABC Bank. The delivery receipt showed the issuing merchant as Mister Discount General Merchandise. Next to the word "name" was the hand-printed name Louis Maldonado and next to the word "address" was hand-printed 4459 West Washington. In the area marked "received" was a signature "Wilner Maldonado" with the hand-written date of July 12, 2013.

¶ 8 The Illinois State Police crime lab tested the recovered narcotics. The narcotics tested positive for heroin and totaled 4.3 grams. The State offered defendant's 1987 conviction for possession of a stolen motor vehicle in No. 86 CR 02215 to establish his prior felony conviction.

¶ 9 Defendant moved for a directed finding of not guilty, arguing insufficient proof of defendant's dominion or control over the premises. Defendant argued that the contraband was found in the midst of women's clothing and women's wigs and there were no admissions of residency. The court denied defendant's motion. The State rested.

¶ 10 Defendant's wife, Wilner Maldonado, testified for the defense. She owned the residence at 4459 West Washington Boulevard in July 2011. Defendant was her sixth husband, and two of her previous husbands lived at that residence prior to defendant. Wilner's ex-boyfriend, goddaughter and half-sister also lived at the residence prior to July 2011. Wilner's ex-boyfriend, Joe Dunning, left in 2010 after Wilner "put him out." Defendant moved into the house in March 2011.

¶ 11 When defense counsel attempted to elicit testimony from Wilner regarding Dunning's drug problems, the State objected. The objection was sustained. Defense counsel then asked Wilner if, to her knowledge, Dunning had ever used drugs. The State's objection was sustained. Defense counsel then asked Wilner if she ever saw Dunning with drugs. The State made a relevancy objection and the court instructed defense counsel to lay a foundation. Defense counsel argued that he expected the testimony to be that Dunning had drugs in the house. Counsel then abandoned that line of questioning.

¶ 12 Wilner then testified that the statue containing the heroin that was found in the south bedroom belonged to her and that she had owned the statue for about 10 years. She stated that the middle bedroom was used by her goddaughter and that the clothing on the bed in the middle room belonged to her goddaughter. In the State's photographs, she identified her umbrella, her wigs and "some old ammunition" of hers. The closet in the middle bedroom contained Wilner's clothes, defendant's clothes and her goddaughter's clothes. Wilner testified that she had been issued a valid firearm owner's identification (FOID) card, but that it had expired in 2008. After this testimony, the trial court, concerned that Wilner might incriminate herself by admitting to the possession of ammunition in her home while her FOID card was expired, asked her to stop her testimony. The court advised Wilner of her right to an attorney and asked her wait in the hallway.

¶ 13 The court then relayed its concern that Wilner was confessing to a crime and indicated that it believed that she needed to be advised against incriminating herself and of her right to her own attorney. After further discussion, Wilner was brought back before the court. After defense counsel objected to the "chilling effect" of the court's comments, the court advised Wilner that because of her testimony, she was entitled to know that she had the right to not incriminate herself and the right to an attorney. Wilner observed that "this is mind boggling," and the court refused to answer any of Wilner's questions on the subject. The court then continued the trial to allow Wilner to obtain the advice of counsel.

¶ 14     About six weeks later, after consulting with an attorney, Wilner was recalled. She testified that she owned the ammunition found in the kitchen. On cross-examination, Wilner stated that her FOID card showed her previous address as her residence, not the home she and defendant shared. She also testified that defendant had lived with her for about six months before the search and that Dunning had not lived in or entered the home during the 18 months prior to the execution of the search warrant.

¶ 15     At the conclusion of the trial, the court found defendant guilty of all counts. After hearing evidence in aggravation and mitigation, the court sentenced defendant to three years' intensive drug probation. Defendant was also ordered to pay numerous fines and fees, including a $750 "Controlled Substance Emergency Response" fee. It is from this judgment that defendant now appeals.

¶ 16                                ANALYSIS

¶ 17     Defendant first argues that his conviction for UUWF and possession of heroin with intent to deliver should be reversed because the State failed to prove beyond a reasonable doubt that the ammunition and the statue where the drugs were hidden belonged to him.

¶ 18     The standard of review on a challenge to the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Ross*, 229 Ill. 2d 255, 272 (2008). It is not the function of the reviewing court to retry the defendant or substitute its judgment for that of the trier of fact. *People v. Collins*, 214 Ill. 2d 206, 217 (2005). The trier of fact assesses the credibility of the witnesses, determines the appropriate weight of the testimony and resolves conflicts or inconsistencies in the evidence. *People v. Naylor*, 229 Ill. 2d 584, 614 (2008). The trier of fact is not required to disregard inferences that flow from the evidence or search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt. *People v. Hall*, 194 Ill. 2d 305, 332 (2000). A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Siguenza-Brito*, 235 Ill. 2d 213, 225 (2009).

¶ 19     Defendant's argument regarding the sufficiency of the evidence is centered on his wife's testimony that the ammunition and statue belonged to her. Defendant argues that the State did not present a single piece of evidence contradicting Wilner's testimony. The trial court heard Wilner's testimony and remarked that it did not give much credence to her testimony. The trial court stated:

> "Frankly, I don't believe the testimony of Mrs. Maldonado. It just seems inherently improbable that a person would leave behind 4.3 grams of heroin after they leave the home and would leave that in there for a substantial period of time without coming back to get it. That just doesn't make sense to me. People who are either in that trade or who are heroin users would not leave a substantial quantity of heroin in the home.
>
> I find that the testimony concerning the ownership of some of the ammunition again is inherently improbable. People may keep souvenirs of relationships, but it is generally not bullets. And frankly, under all the circumstances, I find her testimony to be incredible."

¶ 20    Due consideration must be given to the fact that the trial court is "best equipped to judge the credibility of witnesses." *People v. Wheeler*, 226 Ill. 2d 92, 114 (2007). Where "the record is not such that the only inference reasonably drawn from flaws in the testimony is disbelief of the whole," the reviewing court should grant the trial court's credibility determinations deference. *People v. Cunningham*, 212 Ill. 2d 274, 284 (2004). We give deference to the trial court's credibility determination here and decline defendant's invitation to reassess Wilner's credibility. It is clear the trial judge dismissed Wilner's testimony in its entirety, leaving no basis for us to pick and choose which portions of her testimony we should accept or reject in our disposition of this appeal.

¶ 21    That stated, we are left with the State's evidence, considered in a light most favorable to the State, to determine whether the State failed to prove beyond a reasonable doubt that defendant had constructive possession of the ammunition and the heroin found in 4459 West Washington Boulevard.

¶ 22    Defendant was charged with UUWF and possession of heroin with intent to deliver. Both charges require proof of knowledge and possession.[1] To convict the defendant of UUWF, the State was required to prove beyond a reasonable doubt that defendant knowingly possessed firearm ammunition and that he had been previously convicted of a felony. 720 ILCS 5/24-1.1(a) (West 2010). To establish the elements of possession of heroin with intent to deliver, the State was required to prove beyond a reasonable doubt that the defendant had knowledge of the presence of the heroin and that the heroin was in his immediate possession or immediate control. 720 ILCS 570/401(c)(1) (West 2010).

¶ 23    The possession element in this case was presented under the theory of constructive possession rather than actual possession. Proof of constructive possession is sufficient in establishing the element of possession and the State need not prove that defendant had actual physical possession of the contraband. *People v. McLaurin*, 331 Ill. App. 3d 498, 502 (2002). To establish constructive possession, the State must prove that defendant had knowledge of the contraband and that defendant exercised immediate and exclusive control over the area where the contraband was found. *People v. Love*, 404 Ill. App. 3d 784, 788 (2010). Constructive possession is often proven entirely by circumstantial evidence. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). Thus, both actual and constructive possession requires proof beyond a reasonable doubt that the defendant knowingly possessed the prohibited item.

¶ 24    In this case, the State failed to establish constructive possession with respect to the heroin and the ammunition. First, the State did not present any direct evidence establishing defendant's control over the premises. Second, even if the State's evidence of the two mailings and the one delivery receipt was sufficient to draw an inference that defendant controlled the premises, the State did not present any evidence, direct or circumstantial, that defendant had knowledge of the contraband found therein. The evidence the trial court found credible was, in a nutshell: officers searched a residential location that contained men's and women's clothing, no one was on the scene before, during or after the search, ammunition and heroin hidden in a statue was found on the premises along with three documents that bore defendant's name and the address of the premises searched, and a certified copy of defendant's felony conviction was admitted into evidence. Other than an officer reading the name on the documents, the

---

[1]Because we find the proof of knowledge and possession lacking, there is no need to discuss whether there was sufficient proof of intent to deliver heroin.

defendant's name was not once uttered during the State's case-in-chief. This evidence does not prove the essential elements of the possessory crimes charged.

¶ 25                                   Proof of Possession and Control

¶ 26    Although defendant does not argue that he did not live in the home where the heroin and ammunition were found, in considering the argument that the State did not meet its burden of proof beyond a reasonable doubt, we cannot ignore the state of the record: the State did not present sufficient evidence to establish defendant's control of the premises. The police searched a residence pursuant to the uncontested authority of a search warrant. Contraband was recovered and no effort to suppress the admission of this evidence at trial was made. No one was present in the residence when the search warrant was executed. Although irrelevant to this appeal, for background purposes we recognize that the warrant issued based on information from a confidential informant that, within the last 48 hours, the informant and "Louis Maldonado" were in the residence at 4459 West Washington Boulevard when "Louis" displayed a silver .44-caliber semiautomatic handgun with a black handle. Setting aside the hearsay considerations, a search of the trial transcript does not reveal that the search warrant was proffered or admitted into evidence at trial. Therefore, this information in the search warrant was not before the trial court.

¶ 27    At trial, the parties stipulated that Officer Cilio "recovered three pieces of proof of residency." The State argues these documents established defendant's control of the premises. We disagree. Although counsel for both sides were not burdened by any notion of precision when briefly dealing with the stipulation, in our view the context in which the stipulation was spread of record clearly indicates the stipulation was not that the three items were proof that defendant lived at 4459 West Washington Boulevard; rather, the purpose of the stipulation was foundational: the stipulated items were the three documents recovered during the search, offered to support an inference of defendant's residency and control of the location where the contraband was seized.

¶ 28    These three pieces of "proof of residency" consist of one retail delivery receipt and two pieces of unopened mail. The receipt, dated July 11, 2011, is captioned "Delivery Sheet" from a self-described furniture store that shows defendant's name as the purchaser and 4459 West Washington Boulevard as the purchaser's address. The receipt indicates that the delivery was "checked in good condition" indicated by a handwritten signature reading "Wilner Maldonado" (apparently defendant's wife). One unopened piece of mail bears defendant's name and the address of 4459 West Washington Boulevard and it clearly appears to be a solicitation of some kind, *i.e.*, junk mail. A single piece of junk mail has little or no evidentiary value given the nature of mass mailing solicitations. The second piece of unopened mail shows a return address of ABC Bank with the name Louis Maldonado printed on the first line, the name Wilner Jackson printed below and 4459 West Washington Boulevard below that. It is unclear whether this piece of mail is official business or whether it is also a junk mail solicitation of some kind.

¶ 29    Habitation of the location where contraband is found can constitute sufficient evidence of control to establish constructive possession. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17; *People v. Cunningham*, 309 Ill. App. 3d 824, 828 (1999). Numerous reported decisions reference mail as part of the evidence used to support an inference that the defendant controlled the location where the contraband was recovered regardless of whether the defendant was

present at the time of the seizure. While it is clear from existing case law that mail addressed to a defendant found where contraband is recovered may be sufficient to allow an inference of residency, and thereby control, we will not draw the same inference when a defendant is not present during the execution of a search warrant and other indicia of residency or an admission of residency is not shown. *People v. McCarter*, 339 Ill. App. 3d 876 (2003); *People v. Alicea*, 2013 IL App (1st) 112602; see also *People v. Jones*, 105 Ill. App. 3d 1143 (1982) (defendant was not present during search, unopened envelope addressed to defendant insufficient to prove control of property); *People v. Ray*, 232 Ill. App. 3d 459 (1992) (six-month-old cable bill insufficient to prove control over premises on theory of constructive possession); *People v. Blue*, 343 Ill. App. 3d 927 (2003) (although defendant was present in the apartment where narcotics were found, insufficient evidence of control where there was no testimony of any mail addressed to defendant, no rent receipts, no utility bills, no clothing in closets, and no proof defendant had a key to the residence); *People v. Cunningham*, 309 Ill. App. 3d 824 (1999) (evidence of residency included the defendant carried keys to the house, the address was on his driver's license, his mail was delivered there, and defendant told his parole officer that he lived at the residence).

¶ 30     In *People v. McCarter*, 339 Ill. App. 3d 876 (2003), and *People v. Alicea*, 2013 IL App (1st) 112602, this court discussed evidence of mail addressed to the defendant at the location of the search and its import as evidence from which an inference of control could be drawn. In *McCarter*, we found the defendant constructively possessed weapons found in the bedroom in his parents' house even though he was not home at the time the search warrant was executed. The weapons were discovered in and on a dresser that had photographs of the defendant together with mail addressed to the defendant that was postmarked four days earlier. One officer testified he knew the defendant lived there based on prior encounters and the defendant made prior statements indicating that he lived there. *McCarter*, 339 Ill. App. 3d at 879. Thus, *McCarter* illustrates that a mailing in combination with other evidence can be sufficient proof of control.

¶ 31     In *Alicea*, police officers forced entry into a first-floor apartment where an informant previously purchased two bags of heroin from Alicea. A man identified as the defendant's son walked out of a rear bedroom. Police recovered weapons in the front bedroom of the apartment, along with a United States Treasury check addressed to the defendant. *Alicea*, 2013 IL App (1st) 112602, ¶ 6. Alicea was not present at the time of the search of the apartment.

¶ 32     At trial, the State introduced a certified copy of the defendant's driver's license abstract listing his address as the apartment that was searched. *Id*. ¶ 12. There was also testimony that the defendant left the apartment earlier in the year but his monthly Veteran's Administration check continued to be sent to the searched premises, where his daughter currently lived. *Id*. ¶¶ 14-15. His daughter testified that she deposited her father's check each month after it arrived. *Id*. ¶ 14.

¶ 33     We reversed the unlawful possession of a weapon by a felon conviction, finding that there was insufficient evidence to establish defendant's residence at the apartment or his control of the bedroom where the weapon was found. *Id*. ¶¶ 28-33. We reasoned that, while the Treasury check and the driver's license abstract supported the inference that the defendant resided at the apartment, in light of the conflicting evidence regarding the defendant's residence, the evidence was insufficient to sustain the conviction. *Id*. ¶¶ 28-30. In addition, we found that it was "not inherently incredible" that the defendant would have his government check sent to his

old address if his daughter took care of seeing that it was deposited nor was it unreasonable that the defendant's driver's abstract would list his prior address, rather than his current address, because the defendant's name may not have appeared on the mortgage or on any bills related to the fiancé's address. *Id*. ¶ 31. Thus, *Alicea* illustrates mailings are not dispositive of the issue of possession or control even where other evidence of residency is introduced.

¶ 34       Here, defendant was not present when the search warrant was executed. No admissions by defendant regarding his residency were introduced by the State. Setting aside the fact there was no trial testimony that put defendant in proximity to the contraband at any time, there was no testimony that defendant was ever seen inside the location. Other than the three pieces of "proof of residency," which are of minimal inferential value at best, similar to *Alicea*, the State offered no other credible evidence from which a reasonable inference flows to establish beyond a reasonable doubt that defendant maintained sufficient legal control of the premises, let alone had control over the contents within the premises, including the statue, the bedrooms or the common areas.

¶ 35       The State cites *People v. Cunningham*, 309 Ill. App. 3d 824 (1999), in support of its position that it proved defendant's constructive possession of the contraband. A brief summary will demonstrate its inapplicability to the facts of this case. In *Cunningham*, police obtained a search warrant for the defendant and his residence based on an informant's tip. *Id*. at 826. The defendant was arrested the next day and officers took the defendant to his residence. Officers used a key taken from the defendant's pocket to enter the house. A female, two juveniles and two infants were in the home. Officers used another key taken from the defendant to open the door to a front bedroom. Inside the bedroom were men's clothes in the closet and tools on the floor. The officers recovered a plastic bag with 420.5 grams of cocaine, three scales, a mixing bowl, a box of ammunition, and the defendant's inmate identification card. They also found a bag with 26.67 grams of cannabis in the downstairs bedroom. One of the juveniles claimed that the cannabis belonged to him. A mail carrier testified that he delivered mail to the defendant at that address and the mail was not returned. Defendant gave that address to his parole officer and the arresting officers. The female testified on the defendant's behalf and claimed that she was the only occupant of the front bedroom and that she, her son, her daughter and one other person had a key to that room. *Id*. at 826-27.

¶ 36       On appeal, the defendant argued that the evidence was insufficient to establish constructive possession of the cocaine, cannabis and ammunition. *Id*. at 828. We held that the evidence established that the defendant lived at that residence because he carried keys to the house and keys to the bedroom, the address of the residence was on his driver's license, his mail was delivered to that address, and the defendant gave that address to his parole officer and the police when he was arrested. This court noted that although the female testified that the defendant no longer lived there, there was no evidence in the record to show that he lived anywhere else. *Id*.

¶ 37       *Cunningham* does not support the State's argument. The evidence presented in *Cunningham* clearly established an inference that defendant did in fact live at that residence and therefore had control. He had keys to the entryway door and the bedroom door. The address was on his driver's license. He received mail there. He gave that address to his parole officer and the arresting officers. In this case, the only evidence the State offered to establish defendant's control of the premises was one receipt and two pieces of unopened mail bearing defendant's name and the address of the location searched, which is insufficient evidence to

establish proof of control beyond a reasonable doubt.

¶ 38                                     Knowledge as an Essential Element

¶ 39      It is well established that a defendant's control over the premises where contraband is located gives rise to an inference of knowledge of that contraband. *People v. Smith*, 191 Ill. 2d 408 (2000). Even if we were satisfied that the State established defendant's control over the premises beyond a reasonable doubt, which we find it did not, the record demonstrates an equally fundamental failure to prove beyond a reasonable doubt that defendant had knowledge that the contraband was located on the premises.

¶ 40      The State seems to gloss over the required element of knowledge in this case by simply relying on the control portion of a constructive possession analysis to prove the element of knowledge. However, while knowledge can be inferred based on control, it remains a fundamental principle that knowledge is a necessary element of the offense of possession of heroin with intent to deliver and of felony possession of ammunition UUWF that must be proven beyond a reasonable doubt. *People v. Mack*, 12 Ill. 2d 151, 159-60 (1957). Knowledge is rarely proven by direct evidence and may be established by evidence of the defendant's acts, declarations or conduct from which the inference may be fairly drawn that he knew of the existence of the contraband where it was found. *People v. Smith*, 20 Ill. 2d 345, 350-51 (1960); *Mack*, 12 Ill. 2d at 159-60. Such a factual determination is a question for the trier of fact. *Id.*

¶ 41      The record is clear that there was no evidence presented to prove defendant's knowledge of the presence of the heroin. With the State failing to present evidence that defendant was ever inside the building, there is no evidence of the defendant and the contraband being in such proximity that an inference of defendant's knowledge of the contraband could be established. The State presented no evidence of any acts, declarations or conduct by the defendant that would allow this court to draw a reasonable inference that defendant had knowledge of the presence of the heroin hidden in the statue found on a bedside table. The heroin was secreted in the statue. There is no reasonable inference that flows from the evidence in the record that defendant at any time would have known the contents of an enclosed statue. While the State persists in referencing Wilner's testimony to infer defendant's knowledge, the trial court found Wilner, a defense witness, incredible. Even if she was found credible, her testimony did nothing to support a reasonable inference of defendant's knowledge of the contents of the statue. There was simply no evidence from which we could connect or draw a nexus between the drugs found in the statue and defendant. While defendant arguably may have had control over the premises, when viewed in the light most favorable to the State, we cannot conclude that the evidence in the record established that defendant had knowledge of the heroin located on the premises or within the statue. *Cf. People v. Givens*, 237 Ill. 2d 311 (2010) (affirming conviction where defendant was found half asleep within arm's reach of a razor blade and a plastic bag containing 21 smaller bags of cocaine and he admitted during his own testimony that he exerted control over the bedroom where the drugs were found). *People v. Walton*, 221 Ill. App. 3d 782 (1991) (affirming conviction where during a police chase defendant's vehicle crashed and cocaine was found in the trunk; defendant was found outside the car with 96 plastic bags and a scale on her person).

¶ 42      We reach the same conclusion with respect to the ammunition. Two boxes of ammunition were found in a box in a bedroom containing men's and women's clothing with no specific testimony to support, at the very least, an inference that it was defendant's bedroom or his

clothing. There was no evidence that would allow a reasonable inference that defendant had knowledge of the ammunition in a box on the dresser found among women's wigs and other women's items. We similarly conclude that there was no evidence in the record from which we can infer defendant's knowledge of the ammunition found in the kitchen. While the kitchen is centrally located and is a common space typically used by all occupants, there was no evidence proffered by the State that the defendant was in proximity to the ammunition at or after it was placed in the kitchen to allow a reasonable inference that he knew of its presence. Again, with no evidence in the record of defendant ever being inside the building, there is no evidence from which we can infer that defendant and the ammunition were ever in such proximity that an inference of knowledge could be argued much less proven beyond a reasonable doubt.

¶ 43 In so concluding, there is no need to consider defendant's argument that because other people had access to the residence proof of constructive possession failed. Were we to consider this argument, we would reject it summarily based on the settled law that constructive possession of contraband can be established even where possession is joint or others have access to the area where the contraband is recovered. *People v. Griffin*, 194 Ill. App. 3d 286, 292 (1990).

¶ 44 The State had the burden of proving beyond a reasonable doubt that defendant knowingly possessed the heroin and the ammunition. *People v. Hodogbey*, 306 Ill. App. 3d 555, 562 (1999). The State failed to present any evidence that defendant was on the premises at any time, or other indicia of control, *e.g.*, keys or a driver's license or an admission that he was connected to the premises, or that defendant was ever in proximity to the contraband recovered. Therefore, the State's evidence was insufficient to prove the essential elements of possession and knowledge and defendant's guilt beyond a reasonable doubt.

¶ 45 In this case, because the State's three pieces of evidence were insufficient to establish defendant's possession or knowledge of the contraband, we hold that the defendant was not proven guilty beyond a reasonable doubt of: (1) possession with intent to deliver or (2) possession of ammunition by a felon (UUWF), we need not consider defendant's remaining arguments.

¶ 46 With insufficient evidence to convict, we reverse defendant's convictions outright and we vacate the judgment order imposing all fines and all fees assessed.

¶ 47 Reversed.