2026 IL App (1st) 242082-U

No. 1-24-2082

Order filed February 19, 2026

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 22 CR 01908 |
| | ) | |
| DARRIAN RUSSELL, | ) | Honorable |
| | ) | Michael J. Hood, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Navarro and Justice Lyle concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm defendant's conviction for armed habitual criminal where circumstantial evidence was sufficient to prove he constructively possessed a weapon.

¶ 2    Following a bench trial, defendant Darrian Russell was found guilty of being an armed habitual criminal (AHC) (720 ILCS 5/24-1.7(a) (West 2022)) and unlawful use or possession of a weapon by a felon (UUWF) (720 ILCS 5/24-1.1(a) (West 2022)), premised on his possession of a

firearm.[1] The court merged the UUWF count into the AHC count and imposed six years' imprisonment for AHC. Russell appeals, arguing the circumstantial evidence was insufficient to demonstrate his knowledge of the firearm's location for purposes of constructive possession. We affirm.

¶ 3    Russell was charged with multiple offenses following law enforcement's search of his apartment. The State proceeded on one count of AHC and one count of UUWF.

¶ 4    Chicago Police Department (CPD) officer Oswaldo Maldonado testified that he and other officers assisted agents from the Illinois Department of Corrections (IDOC) with a parole check at an apartment on the 1100 block of North Monitor Avenue in Chicago at 7:30 a.m. on February 1, 2022. A dining and kitchen area was located inside the front door to the right. The kitchen had a countertop and wall cabinets, about seven feet high. The main space also contained a living area with a couch. A small hallway led from the living area to a bathroom and the one bedroom.

¶ 5    When Maldonado arrived, Russell, whom Maldonado identified in court, was already handcuffed, and parole agents were helping him dress in the kitchen area. While IDOC personnel conducted their search, Maldonado stayed with Russell, who admitted to being paroled at the apartment. Maldonado testified that an IDOC agent asked Russell to sit down, and Russell chose to sit on the kitchen countertop. According to Maldonado, Russell looked up at the top of the kitchen cabinets "multiple times." Russell also said he thought that IDOC was "only supposed to search where somebody's room is."

---

[1] Sections 24-1.7 and 24-1.1 of the Criminal Code of 2012 (Code) have been renamed "[u]nlawful possession of a firearm by a repeat felony offender" and "[u]nlawful possession of weapons by felons," respectively, effective January 1, 2025. 720 ILCS 5/24-1.7, 24-1.1 (West 2024)). We will refer to these offenses by their prior names to conform with the version of the Code under which defendant was charged.

¶ 6 Maldonado asked IDOC agents whether they had searched above the wall cabinets. Officers asked Russell to move, and Maldonado climbed onto the countertop, where he stood to search the top of the cabinet above where Russell had been sitting. Moving aside several ramen packets, Maldonado discovered a firearm, which he determined was loaded. The packets had obscured the firearm so that it was not visible to an individual standing on the floor. Maldonado alerted IDOC agents to the weapon, and Russell responded that the firearm belonged to someone else, although he had seen it before. Maldonado, who was 5'10", retrieved the firearm while standing on the floor as he was tall enough to reach it. Maldonado testified that Russell was taller, approximately six feet tall.

¶ 7 The State published footage from Maldonado's body-worn camera (BWC), which is included in the record on appeal and this court has reviewed. In the footage, Maldonado enters the apartment's main room. Immediately to the right, a tiled floor section defines a small kitchen, which contains a stove, a countertop with a sink, cabinets both under the countertop and mounted to the wall above it, and a refrigerator. Various items sit on the countertop and on top of the wall-mounted cabinets. A couch divides the rest of the main room between a living room on the left and a smaller area beyond the refrigerator, in which sits a square folding card table with a microwave on top of it.

¶ 8 Russell, handcuffed and wearing only boxers, stands between the couch and the refrigerator, facing toward the living room and away from the kitchen. Officers help him put on pants, and Maldonado walks behind Russell to assist. The BWC now faces the living area with the kitchen area directly behind it. Russell says his "living area" is "right there" and nods towards a hallway leading past to the living room to an open interior door.

¶ 9     The officer who had been helping Russell dress walks toward the kitchen. Russell tracks his movements, turning his body and head toward the kitchen. His eyes flick upward for a moment before he levels his gaze again. Russell looks back toward the living room before turning toward the kitchen and asking someone off camera if he can sit down. After being told that they will let him know when he can sit, Russell says, "Alright, my bad." His eyes again flick up past eye level, and he briefly looks side to side before looking back down.

¶ 10    Maldonado walks to the right and around Russell so that the BWC faces the front of the main room. Facing the hallway opposite the kitchen, Russell repeats that his living area is "in that room right there." He leans against the refrigerator facing away from the kitchen, occasionally looking around at the various people moving about the apartment. He confirms that the is the only person who lives in the apartment and adds that he sometimes stays with family.

¶ 11    While talking to one of the officers, Russell turns his head toward the kitchen and asks to sit on the countertop "right here." He takes a few side-to-side steps and sits on the countertop, saying "I don't want to be in y'all way." At an officer's request, he gets off while the officer searches the counter. He watches the search over his right shoulder for a time before turning back in the rough direction of the camera. As his head returns to a neutral position, he appears to glance up again, but lens distortion makes it impossible to tell whether he is looking in the direction of the hidden gun or the top of the refrigerator.

¶ 12    An officer tells Russell he can sit on the countertop, and he does. Russell asks what brought law enforcement to his apartment. He also says, "I thought parole checked—y'all supposed to check—I don't mind—I don't 'cause I know ain't nothing here, but I thought parole checked—

like—you're supposed to check your living area." Six minutes go by as the officers continue searching. Russell remains seated on the counter, chatting with them. He does not glance up.

¶ 13    One of the searchers appears to ask Maldonado to search the top of the kitchen cabinets. Maldonado gestures for Russell to get down, and Maldonado climbs to stand on the countertop. The wall cabinets fill the frame, and Maldonado says, "Well, we got a gun here." Russell, out of frame, says not to touch it, that his fingerprints are not on it, and that it is not his. Maldonado climbs down, and Russell comes back into view, says that the weapon is not his and that his living area is "in that room," and asks to call his family because he knows he will be arrested. Russell claims the firearm belongs to an individual named Tracy Williams. (Williams' first name also appears as "Tracey" in the record.) Russell sits on the card table and continues to deny that the firearm is his.

¶ 14    Maldonado climbs on the countertop to photograph the firearm and clambers down. Standing on the floor, Maldonado reaches his hands up and out of frame before bringing them back down holding the firearm. Russell insists the weapon belongs to Williams, says that Williams' paperwork is on top of the refrigerator, and claims that Williams is in the apartment "every day." Russell claims he has seen the firearm before in Williams' possession. Officers and agents lead Russell out of the apartment.

¶ 15    The State introduced several exhibits, which the record on appeal includes and we have reviewed. Maldonado identified People's Exhibits Nos. 2 through 8 as BWC stills depicting Russell looking at the top of the kitchen cabinets and sitting below where the firearm was found. People's Exhibit No. 9 was a photograph of the firearm on top of the kitchen cabinet next to ramen

packets, and People's Exhibit No. 10 was a photograph taken in the apartment of Russell's driver's license bearing the address of the apartment, a copy of the license, and cash.

¶ 16    On cross-examination, Maldonado elaborated that the couch and refrigerator were equidistant from where Russell had been standing when Maldonado entered. Maldonado acknowledged that the counter and couch were the only places to sit but testified that Russell was free to sit anywhere in the apartment and had chosen to sit beneath the firearm. Maldonado did not know whether officers had recovered Williams' paperwork, or who leased the apartment, and stated the firearm had not been tested for DNA or fingerprints.

¶ 17    The State entered two certified statements of Russell's convictions for possession of a controlled substance with intent to deliver and for UUWF.

¶ 18    In closing, defense counsel contended, in relevant part, that the BWC footage and stills did not show Russell peering at the firearm's location. Counsel also argued that IDOC and CPD personnel failed to investigate who else could have used the apartment, explore Williams as the weapon's potential owner, or test the firearm for DNA or fingerprints.

¶ 19    The trial court found Russell guilty of AHC and UUWF, stating it had "no doubt" that Russell "knew that gun was there." It discounted evidence of anyone else occupying the apartment or that Williams owned the firearm; rather, "[t]he only evidence" that Wiliams owned the firearm was Russell's statement. The court added that Russell's possessions were in the apartment, and the search warrant had been executed early in the morning. Further, the video showed Russell positioning himself "right underneath that weapon" and "glanc[ing]" in the firearm's direction. The court concluded that Russell knew of the firearm's presence "beyond any doubt" and that the totality of the circumstances demonstrated knowing possession.

¶ 20    Russell filed a motion to reconsider, which the trial court denied. After a hearing, the court merged the count for UUWF into the count for AHC and imposed six years' imprisonment for AHC.

¶ 21    On appeal, Russell challenges the sufficiency of the evidence that he knew of the firearm's location for the purposes of constructive possession.

¶ 22    When reviewing the sufficiency of the evidence, this court must determine whether any rational trier of fact, viewing the evidence in the light most favorable to the State, " 'could have found the essential elements of the crime beyond a reasonable doubt.' " *People v. Welch*, 2025 IL App (1st) 231116, ¶ 18 (quoting *People v. Smith*, 185 Ill. 2d 532, 541 (1999)). A reviewing court will not retry a defendant. *People v. Daniels*, 2025 IL App (1st) 230823, ¶ 17. It is for the trier of fact to ascertain witness credibility, resolve conflicts in the evidence, and weigh and draw reasonable inferences from the evidence. *People v. Swenson*, 2020 IL 124688, ¶ 36. We will not substitute our judgment for the trier of fact's and will only reverse a conviction where the evidence is " 'so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt.' " *People v. Wade*, 2025 IL App (1st) 231683, ¶ 23 (quoting *People v. Rowell*, 229 Ill. 2d 82, 98 (2008)).

¶ 23    To sustain a conviction for AHC, the State must prove beyond a reasonable doubt that a defendant knowingly possessed a firearm after being convicted of two qualifying felonies. 720 ILCS 5/24-1.7(a) (West 2022). Possession can be actual or constructive. *People v. Brooks*, 2023 IL App (1st) 200435, ¶ 39. As Russell was not in actual possession of the firearm, constructive possession is at issue here. "Constructive possession exists where the defendant (1) had knowledge of the presence of the weapon and (2) exercised immediate and exclusive control over the area

where the weapon was found." *People v. Rainey*, 2025 IL App (1st) 230639, ¶ 45. Russell acknowledges that it is undisputed that he exercised immediate and exclusive control over the area where the firearm was found. He solely challenges whether the State proved his knowledge of the firearm's presence beyond a reasonable doubt.

¶ 24    Knowledge is "often" established with circumstantial evidence. *Wade*, 2025 IL App (1st) 231683, ¶ 25. Circumstantial evidence is "proof of facts or circumstances that give rise to reasonable inferences of other facts" tending to demonstrate a defendant's culpability. *People v. Harris*, 2023 IL App (1st) 210754, ¶ 77. A conviction can be sustained by circumstantial evidence alone. *Welch*, 2025 IL App (1st) 231116, ¶ 30. In cases of constructive possession, circumstantial evidence of knowledge includes " 'a defendant's acts, declarations, or conduct from which it can be inferred that he knew the contraband existed in the place it was found.' " *Wade*, 2025 IL App (1st) 231683, ¶¶ 25, 27 (quoting *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17). Control of the premises where contraband was found "gives rise to an inference of knowledge and possession of that contraband," but knowledge must still be independently proven. *People v. Jones*, 2023 IL 127810, ¶ 30; *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 40.

¶ 25    Russell urges that the State's circumstantial evidence did not demonstrate his knowledge of the firearm's location beyond a reasonable doubt. He contends that he exhibited no "unusual" behavior on the footage that would evince knowledge, and he challenges the trial court's finding that he chose to sit beneath the firearm.

¶ 26    After viewing all the evidence in the light most favorable to the State, a rational trier of fact could have found beyond a reasonable doubt that Russell knew of the firearm. Russell was the only resident of the one-bedroom apartment and was present during the search. *People v. Brown*,

277 Ill. App. 3d 989, 998 (1996) (proximity to contraband, combined with a finding of knowledge supported by other evidence, supports constructive possession). Maldonado testified that Russell glanced at the firearm's hiding place "multiple times." After reviewing the footage, the trial court found that Russell had glanced at the top of the kitchen cabinet. As noted, the footage depicts Russell turning his body, head, and eyes to train his gaze in the rough direction of the top of the kitchen cabinets several times.

¶ 27    Maldonado further testified that Russell chose to sit directly beneath the firearm's location, and the court found that BWC footage depicted Russell "position[ing]" himself below the weapon. As detailed, the footage shows Russell, unprompted, asking to sit on the counter "right here" and not on the dining area table or the couch. Although the court did not comment on it, the footage also shows that Russell repeatedly referred to his "living area" as being situated away from the kitchen and questioned whether the parole search could extend beyond that space, tending to demonstrate that he was aware that there was contraband of some kind hidden outside what he considered to be his "living area."

¶ 28    To the extent Russell's conduct in the BWC footage could be construed in different ways, drawing reasonable inferences from the evidence falls to the trier of fact. *People v. Janosek*, 2021 IL App (1st) 182583, ¶ 41. Based on Maldonado's testimony, the video, and the photo evidence, a rational trier of fact could have found, beyond a reasonable doubt, that Russell was aware of the hidden gun. Therefore, the evidence was sufficient to support Russell's conviction.

¶ 29    Russell also posits that "when contraband is in a location" that a resident "might not normally examine or know about, additional factors beyond residence are necessary to prove knowledge beyond a reasonable doubt." He emphasizes that the firearm was found above the

kitchen cabinets, "a relatively inaccessible, out-of-the-way location." He dismisses the additional trial evidence offered to show knowledge—his seat below the cabinet and his supposed glances at the firearm's hiding place—as unsupported by the BWC footage and stills.

¶ 30     In support of this position, Russell cites *Maldonado*, 2015 IL App (1st) 131874, and *People v. Terrell*, 2017 IL App (1st) 142726. In those cases, the court reversed the defendants' convictions for possession of contraband that law enforcement discovered inside a statue (*Maldonado*, 2015 IL App (1st) 131874, ¶ 41) and a hidden compartment (*Terrell*, 2017 IL App (1st) 142726, ¶ 30). Neither opinion stated the proposition of law that Russell now asserts, *i.e.*, that to establish constructive possession, the State must prove "additional factors" depending on the contraband's location. To the contrary, this court examined the facts of each case and found the evidence as a whole insufficient to sustain the convictions under the applicable standard of review. *Terrell*, 2017 IL App (1st) 142726, ¶¶ 30-31; *Maldonado*, 2015 IL App (1st) 131874, ¶¶ 40-45. Here, in contrast, ample evidence supported the inference that Russell knew of the firearm.

¶ 31     Russell additionally argues that no DNA or fingerprint evidence, or documentation in his name located near the firearm, connected him to the weapon. Again, no such evidence is necessary to establish constructive possession as a conviction can be sustained by circumstantial evidence alone. See *e.g.*, *Brooks*, 2023 IL App (1st) 200435, ¶ 52 (forensic evidence unnecessary where other evidence, including testimony corroborated by photos, established constructive possession); *People v. Faulkner*, 2017 IL App (1st) 132884, ¶ 41 (rejecting contention that the State produced no physical evidence such as fingerprints linking the defendant to the recovered firearm as assault rifle or ammunition; "evidence of constructive possession is often entirely circumstantial"). Rather, viewing all the evidence in the light most favorable to the State (*Welch*, 2025 IL App (1st)

231116, ¶ 18), a rational trier of fact could have concluded beyond a reasonable doubt Russell had constructive possession of the firearm.

¶ 32    For these reasons, we affirm the circuit court's judgment.

¶ 33    Affirmed.