# Illinois Official Reports

## Appellate Court

---

### *People v. Fernandez*, 2016 IL App (1st) 141667

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ARMANDO FERNANDEZ, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-14-1667 |
| Filed | December 20, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-CR-10950; the Hon. Angela Munari Petrone, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Kathleen Weck, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Caitlin A. Corcoran, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MASON delivered the judgment of the court, with opinion.<br>Presiding Justice Hyman and Justice Pierce concurred in the judgment and opinion. |

**OPINION**

¶ 1      Following a 2014 bench trial, defendant Armando Fernandez was convicted of possession of heroin with intent to deliver and eight counts of unlawful possession of a weapon by a felon, for which he was sentenced to concurrent terms of 17 and 7 years' imprisonment, respectively. Fernandez argues that his convictions should be reversed because the evidence was insufficient to prove that he constructively possessed either the heroin or the weapons and ammunition recovered. Alternatively, he maintains that the trial court erred in denying his motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), based on his challenge to the truth of the allegations in the affidavit supporting the search warrant. We agree with Fernandez's first contention and reverse his convictions.

¶ 2                                      BACKGROUND

¶ 3      Fernandez's convictions stemmed from the recovery of heroin, weapons, and ammunition from a single-family home and detached garage at 4636 South Keating Avenue in Chicago, Illinois. The premises were searched in the early morning hours of May 16, 2009, pursuant to a search warrant. Officer George Junkovic of the Chicago police department supported the warrant with an affidavit averring that a confidential informant "J. Doe" told him that on May 15, 2009, J. Doe went to the Keating address to meet Fernandez. According to Junkovic's affidavit recounting the information J. Doe provided, J. Doe and Fernandez went into the detached garage where Fernandez opened the hood of an inoperable van to reveal a large quantity of heroin in a plastic bag. Fernandez broke off a piece of heroin, replaced the bag under the hood, and went inside the residence with J. Doe. Once inside, J. Doe observed Fernandez package the piece of heroin in multiple knotted plastic bags and place them in a kitchen cabinet. Fernandez bragged to J. Doe that his heroin was the "best *** around" and that "everyone I sell it to loves it." J. Doe identified Fernandez and the residence from photos that Officer Junkovic showed him.

¶ 4      Based on this affidavit, as well as the in-court presentation of J. Doe, the court issued a warrant authorizing a search of the residence and garage, where officers recovered heroin and weapons. Fernandez was charged with one count of possession with intent to deliver more than 900 grams of heroin and eight counts of unlawful use of a weapon by a felon.

¶ 5      Prior to trial, Fernandez moved for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), contending that the affidavit supporting the search warrant included false statements that were necessary to the finding of probable cause. Fernandez supported his motion with his own affidavit, as well as affidavits from Elia Fernandez Bahena (Fernandez's aunt), Rosita Fernandez (Fernandez's sister), Celedonia Garcia (Fernandez's grandmother), and Elizabeth Reyes (Fernandez's cousin). According to Fernandez's and his family's affidavits, Fernandez lived at 1850 North Kedvale Avenue in Chicago and did not live at or have keys to the Keating address. Rather, his aunt and cousin lived at that address. Fernandez denied that he was present at the Keating address on May 15, and his aunt corroborated his claim, averring that she was home all day on May 15 and never saw Fernandez. The affidavits further stated that Fernandez was in Kenosha, Wisconsin, visiting his sister and grandmother from the evening of May 14 until approximately 4:00 p.m. on May 15, when he left his sister's home to return to Chicago.

¶ 6 The trial court denied a *Franks* hearing after considering this evidence, finding that because the informant appeared before the judge issuing the warrant, *Franks* did not apply, and that the affidavits did not necessarily contradict the informant's claims in any event.

¶ 7 At trial, Officer Ryan Delaney testified to the events of May 15 and 16, 2009. On May 15, at approximately 6 p.m., Officer Delaney was in an unmarked car on surveillance duty near 2738 West Evergreen Avenue in Chicago. He had learned that a drug transaction would occur at that location involving a male in a gold car with Wisconsin license plates. A gold car eventually pulled up in front of him, and Officer Delaney observed a male Hispanic driver, whom he identified in court as Fernandez, exit the vehicle. Fernandez crossed the street and approached another individual while removing a softball-sized object from his pocket. Officer Delaney, having observed dozens of narcotics transactions, recognized this exchange as a drug sale and notified enforcement officers who were standing by. But when the officers approached Fernandez, he fled into a nearby apartment building. As his fellow officers pursued Fernandez, Officer Delaney went to the gold car and saw a woman inside. He ordered the woman out of the vehicle, and then noticed two bags of suspected heroin on the gearshift, which he recovered and inventoried.

¶ 8 Several minutes later, other officers arrived with Fernandez in custody. A search of Fernandez at the scene revealed that the softball-sized object in his possession was a large plastic bag containing smaller baggies of heroin. Fernandez was not charged with possession of this suspect heroin or the heroin recovered from his car after he was apprehended.

¶ 9 After Fernandez was taken into custody, he was transported to the police station, where a second search revealed a set of keys. The arresting officers read Fernandez his *Miranda* rights, and Fernandez then admitted to selling heroin but denied his girlfriend's involvement. Fernandez's admission was not reflected in any police reports.

¶ 10 At approximately 1:00 a.m. on May 16, a team of officers, including Officer Delaney, executed the search warrant for the home and garage at 4636 South Keating Avenue. The officers forced entry into the home, where they encountered a man who said he lived in the downstairs bedroom with his dog and identified himself as Fernandez's "butler." The court did not consider this hearsay testimony for the truth of the matter asserted but rather to explain the officers' decision not to arrest or question this unidentified man.

¶ 11 The officers' search of the home revealed a .38-caliber handgun beneath a mattress in a bedroom. Also in that bedroom, officers found a passport and insurance cards belonging to Fernandez, as well as framed pictures of Fernandez with the woman in the car. Neither the passport nor the insurance cards listed an address for Fernandez. The closet held both men's and women's clothes. There were additional framed pictures of Fernandez with the same woman hanging on the wall in the living room area.

¶ 12 Officer Delaney then forced entry into the garage from the service door, though he later learned that the keys he recovered from Fernandez unlocked both that door and the door to the house. In the garage, officers observed a broken van with flat tires. Officer Delaney recovered two .357-caliber handguns under the hood of the van along with a brick of suspect heroin and large bags containing smaller knotted bags of heroin. He also recovered ammunition for the .357-caliber handguns and a box of ammunition for a .38-caliber handgun. Other officers recovered an additional .32-caliber gun under the hood of the van.

¶ 13 Officer Delaney admitted that he did not submit the recovered items for fingerprints, nor did he make an attempt to determine to whom the van was registered. He also acknowledged

that the arrest report he prepared reflected that Fernandez's address was 1850 North Kedvale Avenue, though he could not recall whether Fernandez was the source of that information.

¶ 14    After the State rested, the parties stipulated to the testimony of Fernandez's father, who would testify that he tendered Fernandez's counsel several items of mail addressed to Fernandez at 1850 North Kedvale Avenue.

¶ 15    The court found Fernandez guilty of all counts and sentenced him to 17 years of imprisonment on the count of possession with intent to deliver and 7 years of imprisonment on the weapons counts, to be served concurrently.

¶ 16                                              ANALYSIS

¶ 17    The dispositive issue on appeal is the sufficiency of the evidence supporting Fernandez's convictions. Specifically, Fernandez contends that the evidence was insufficient to establish that he constructively possessed the heroin and weapons recovered from the home and the garage. A challenge to the sufficiency of the evidence requires us to consider whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *People v. Baskerville*, 2012 IL 111056, ¶ 31. We will not substitute our judgment for that of the trier of fact, and we will not reverse a conviction unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011).

¶ 18    Fernandez challenges his convictions on the basis that the State did not prove he possessed the contraband recovered. Possession may be either actual or constructive. *People v. Love*, 404 Ill. App. 3d 784, 788 (2010). Because it is undisputed that Fernandez did not have actual possession of the weapons, ammunition, or heroin, we consider only whether he constructively possessed these items. Constructive possession exists where there is no personal dominion over the contraband, but the defendant has control over the area where the contraband was found. *People v. Hunter*, 2013 IL 114100, ¶ 19. Stated differently, the State must prove beyond a reasonable doubt that the defendant had knowledge of the presence of the contraband and exercised "immediate and exclusive" control over the area where the contraband was discovered. *People v. Tates*, 2016 IL App (1st) 140619, ¶ 19. Significantly, evidence establishing constructive possession is " 'often entirely circumstantial.' " *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003) (quoting *People v. McLaurin*, 331 Ill. App. 3d 498, 502 (2002)).

¶ 19    Turning first to the .38-caliber handgun recovered under a mattress in the bedroom at 4636 South Keating Avenue, Fernandez concedes that habitation of the premises where contraband is found is generally sufficient evidence of control constituting constructive possession (see *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 29), but he maintains that there was insufficient evidence to establish habitation here. We agree. Evidence of residency or habitation often takes the form of rent receipts, utility bills, or mail (see, *e.g.*, *id.*; *People v. Lawton*, 253 Ill. App. 3d 144, 147 (1993)), none of which link Fernandez to the Keating address. To the contrary, the evidence at trial revealed that Fernandez received mail at 1850 North Kedvale Avenue.

¶ 20    Nevertheless, the State contends that the lack of evidence of residency is not dispositive in light of the numerous personal effects Officer Delaney discovered in the home. Specifically, Officer Delaney testified that Fernandez's passport was in a dresser drawer in

the bedroom where the .38-caliber handgun was found, and his insurance cards were on a dresser. The closet contained both men's and women's clothes (although the clothing was never tied to Fernandez), and framed pictures of Fernandez and a woman (who was a passenger in Fernandez's car when he was arrested) were displayed throughout the bedroom and hung on the walls of the living room. Finally, keys unlocking the home's front door were found in Fernandez's possession.[1]

¶ 21 But even viewed in the light most favorable to the State, this evidence does not demonstrate Fernandez's control over the premises. In the first place, this court has never upheld a conviction for possession based solely on a defendant's possession of keys to the location where the contraband was found. See *People v. Orta*, 361 Ill. App. 3d 342, 349 (2005) (collecting case law suggesting that keys alone are insufficient proof of constructive possession); see also *People v. Sams*, 2013 IL App (1st) 121431, ¶ 13 ("Mere *** access to the area in which contraband is found is insufficient to constitute constructive possession."). Moreover, the presence of an unidentified man on the premises at the time the police executed the search warrant weighs against a finding that Fernandez maintained control over the premises.

¶ 22 Finally, even assuming (due to the presence of his passport, insurance cards, and the framed pictures) that Fernandez had some connection with the residence, no evidence placed him in the residence on May 15, 2009, or on any other date, for that matter. Further, the fact that the weapon was concealed under a mattress undercuts the inference that he had knowledge of the gun. On this point, *People v. Maldonado*, 2015 IL App (1st) 131874, is instructive. There, this court reversed the defendant's conviction for possession of drugs, in part, because despite the fact that mail addressed to him was found on the premises, the drugs recovered were hidden in a statue. *Id.* ¶ 41. We reasoned that even if the mail established the defendant's control over the premises (which we determined it did not), the fact that the contraband was hidden, coupled with the State's failure to prove that the defendant was ever inside the residence, precluded a finding that the defendant had knowledge of the drugs. *Id.* Similarly, here, the hidden location of the gun and the State's failure to prove that Fernandez ever entered the home creates a reasonable doubt as to Fernandez's knowledge of the presence of the gun.

¶ 23 The foregoing analysis is equally applicable to the issue of whether the evidence was sufficient to prove Fernandez's possession of the contraband recovered in the detached garage. Indeed, the evidence connecting Fernandez to the garage is more tenuous than that connecting him to the bedroom. Unlike the bedroom, which contained Fernandez's identification and photos, there was no evidence linking Fernandez to the detached garage other than the keys recovered from him.

---

[1]Fernandez disputes the veracity of Officer Delaney's testimony that he recovered keys from him, given that the officer testified he "forced entry" into the home. If Officer Delaney had keys, Fernandez posits, there would have been no need to effect a forcible entry. But given that Officer Delaney listed Fernandez's address as 1850 North Kedvale Avenue, he would have had no reason to suspect the keys recovered would give him access to the Keating residence. In any event, the truthfulness of the officer's testimony is a credibility determination we will not disturb on review. See *People v. Williams*, 246 Ill. App. 3d 1025, 1037 (1993).

¶ 24 The State maintains that the recovery of bullets matching the .38-caliber handgun under the mattress is additional evidence connecting Fernandez to the garage, but this is unpersuasive. There is no indication that the weapon recovered under the bed was unique so as to render the presence of ammunition matching that weapon in the garage significant. And just as the gun in the house was hidden under the bed, the weapons and heroin in the garage were concealed under the hood of an inoperable van. Thus, even assuming Fernandez had access to the garage, there is nothing to suggest that he had knowledge of the presence of the hidden contraband. For these reasons, we find the evidence insufficient to sustain Fernandez's convictions and reverse. And because we reverse Fernandez's convictions outright, we need not address his contention that he was entitled to a *Franks* hearing on his claim that the affidavit supporting the issuance of the search warrant contained false information.

## CONCLUSION

¶ 26 Fernandez's conviction for possession of a controlled substance with intent to deliver and his eight convictions for unlawful possession of a weapon by a felon are reversed.

¶ 27 Reversed.