# Illinois Official Reports

## Appellate Court

---

**People v. Terrell, 2017 IL App (1st) 142726**

---

| | |
|---|---|
| Appellate Court Caption | PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TINO TERRELL, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-2726 |
| Rule 23 order filed | March 24, 2017 |
| Rule 23 order withdrawn | April 12, 2017 |
| Opinion filed | April 14, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-CR-3697; the Hon. Michael B. McHale, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Jennifer L. Blagg, of Chicago, for appellant.<br><br>Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg, Jon Walters, and Katherine Schoon, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE HALL delivered the judgment of the court, with opinion.<br>Presiding Justice Gordon and Justice Reyes concurred in the judgment and opinion. |

¶ 1        Defendant Tino Terrell was convicted of possession of a controlled substance following a bench trial and sentenced to 15 years' imprisonment. This is a direct appeal from the judgment of the trial court.

¶ 2                                    BACKGROUND

¶ 3        Terrell was charged with eleven counts of unlawful possession of a weapon by a felon, two counts of possession with intent to deliver a controlled substance, one count of possession of cannabis with intent to deliver, and one count of possession with intent to deliver methamphetamine.

¶ 4        At trial, Officer Robert Gallas testified that on January 17, 2013, he was assigned to a gang unit tasked with executing a search warrant at 6809 South Laflin Street, a two-bedroom first-floor apartment in Chicago, Illinois (Apartment). At approximately 9 p.m., his unit entered the apartment. The apartment door was barricaded with a "scissor gate" with a large padlock. While police attempted to open the door, the lessee of the premises, later discovered to be Edward McDaniel, came to the door. Because McDaniel would not promptly open the door, and the padlock was too large to be cut with large bolt cutters, the team used a "Chicago bar" and sledge hammer to pull the gate from its hinges and enter the apartment. Upon entering, Officer Gallas noted that the rear door was barricaded with two-by-fours.

¶ 5        Officer Dan Pacelli testified that he was also assigned to the team executing the search warrant. He testified that he searched the dining room and front living room area of the apartment. While conducting his search, Officer Pacelli found two prescription bottles with Terrell's name on them in the living room. The trial court noted that the address on the pill bottles differed from the Apartment. One of the bottles had a "use by" date of August 24, 2013, and the date August 24, 2012, was also written on the bottle. The other bottle had a date of issuance of May 23, 2012. One of the bottles still contained pills, while the other was empty. Pacelli also recovered an adult probation card in the living room near the prescription bottles that bore Terrell's name. Terrell's passport was found in the same area as the bottles and the card.

¶ 6        Officer Pacelli also recovered two duffle bags from atop the dining room china cabinet. The bags contained clothing that appeared to fit a male larger than himself. Pacelli described himself as 6 feet, 1 inch tall and weighing 250 pounds. The court noted that Terrell was larger in size than Officer Pacelli and was wearing a 4XL tan department of corrections uniform. Officer Pacelli also noted that Edward McDaniel was of smaller proportions, approximately 6 feet tall and 160-165 pounds.

¶ 7        Officer Michael O'Connor testified that he was also a part of the search warrant team on January 17, 2013. He stated that there were paintings and photos all over the front living room and that he recovered a framed photograph that included Terrell.

¶ 8        Officer Gus Bedoy testified that he searched the whole house and found nothing in the bathroom, kitchen, or either bedroom demonstrating that Terrell lived in the Apartment. Bedoy also testified that he searched the hallway closet and discovered clothing. He stated that while searching a hallway closet, he noticed U-shaped scratches on the side of each wall. He noted that part of the panel on the wall was loose, which led him to look inside. He found metal tracks

inside the wall and uncovered a large, clear, plastic bag which he suspected contained cannabis. He noted that the hidden compartment, commonly referred to as a trap, was three feet wide, three feet high, and approximately two feet deep. Its composition consisted of two-by-fours, metal rails, a battery, power motor, and plastic bands. The trap contained United States currency, digital scales, mixing containers, and mixing agents.

¶ 9 Later, Officer Ciocci discovered multiple firearms in the trap, and the parties stipulated that the weapons recovered consisted of the following guns: a .45 caliber, a loaded 9mm Ruger, a loaded 9mm Berretta, a .357 caliber, a .765 caliber, a loaded 9mm CPX1, and a 9mm Taurus. Also recovered were eight boxes of ammunition.

¶ 10 During the search, FBI Special Agent Christopher Weismantel went out to his car and observed a red pickup truck parked behind him. His car was parked almost directly in front of the Apartment, and agent Weismantel had been previously informed that the pickup truck might belong to Terrell. After noticing Terrell sitting in the driver's seat of the pickup, Weismantel approached him, engaged him in conversation, and asked him to come inside the Apartment, where Terrell was ultimately arrested. Officer Gallas searched Terrell and testified that he could not recall finding any drugs on him or anything indicating that Terrell lived at the Apartment.

¶ 11 Sergeant Michael Karczewski read Terrell his *Miranda* rights at the Apartment, and later, at the police station, Terrell gave the police signed written consent to search the pickup truck. Officer Bedoy testified that, while searching Terrell's vehicle, he discovered a trap hidden behind the radio compartment. He testified that the trap resembled the one found inside Apartment's hallway closet. Specifically, he noted that the motorized bands and insulation in the two traps were similar in composition and nature; however, he also stated that he could not tell whether the same person installed them at the same time and that the parts used were common and could be purchased at electronics or auto parts stores.

¶ 12 At trial, the State introduced a certified copy of defendant's previous conviction for possession of a controlled substance, under case No. 11CR0855601, in which Terrell was sentenced to 24 months probation on September 10, 2012. The State also submitted a certified vehicle record showing defendant's ownership of the pickup truck. The address listed on the vehicle record was 7224 South Marshfield Avenue, Chicago, Illinois.

¶ 13 Defense witness David Cole testified that he owned the home located at 6809 South Laflin Street for 14 years and described it as consisting of two floors; Edward McDaniel had been the lessee of the first-floor apartment since 2011. Cole testified that he did not know defendant and that McDaniel paid the rent in person outside the apartment every month.

¶ 14 The trial court found defendant guilty on all counts except the methamphetamine charge, and on July 14, 2014, the trial court denied defendant's motion for a new trial. Subsequently, this appeal followed.

¶ 15                                                          ANALYSIS

¶ 16 The dispositive issue on appeal is the sufficiency of the evidence supporting Terrell's convictions. Specifically, Terrell contends that the evidence was insufficient to establish that he constructively possessed the drugs and weapons recovered from the Apartment's hallway closet. In response, the State contends that the facts of this case demonstrate that Terrell

inhabited the Apartment and therefore support a finding that Terrell had constructive possession over the drugs and weapons. We disagree with the State.

¶ 17    A challenge to the sufficiency of the evidence requires us to consider whether " 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt.' " *People v. Fernandez*, 2016 IL App (1st) 141667, ¶ 17 (quoting *People v. Baskerville*, 2012 IL 111056, ¶ 31). We will not substitute our judgment for that of the trier of fact, and we will not reverse a conviction unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt. *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011).

¶ 18    Terrell challenges his convictions on the basis that the State did not prove he possessed the contraband recovered. Possession may be either actual or constructive. *People v. Love*, 404 Ill. App. 3d 784, 788 (2010). Because it is undisputed that Terrell did not have actual possession of the weapons, ammunition, or drugs, we consider only whether he constructively possessed these items. Constructive possession exists where there is no personal dominion over the contraband, but the defendant has control over the area where the contraband was found. *People v. Hunter*, 2013 IL 114100, ¶ 19. Stated differently, the State must prove beyond a reasonable doubt that the defendant had knowledge of the presence of the contraband and exercised "immediate and exclusive" control over the area where the contraband was discovered. *People v. Tates*, 2016 IL App (1st) 140619, ¶ 19. Significantly, evidence establishing constructive possession is " 'often entirely circumstantial.' " *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003) (quoting *People v. McLaurin*, 331 Ill. App. 3d 498, 502 (2002)). "A trier of fact is entitled to rely on an inference of knowledge and possession sufficient to sustain a conviction 'absent other factors that might create a reasonable doubt as to the defendant's guilt.' " *People v. Alicea*, 2013 IL App (1st) 112602, ¶ 24 (quoting *McCarter*, 339 Ill. App. 3d at 879).

¶ 19    Generally, habitation of the location where contraband is found is sufficient evidence of control constituting constructive possession. See *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 29. Evidence of residency or habitation often takes the form of rent receipts, utility bills, or mail. See, *e.g.*, *id.*; *People v. Lawton*, 253 Ill. App. 3d 144, 147 (1993). In this particular case, none of the aforementioned items link Terrell to the Apartment; nevertheless, the State contends that the lack of evidence of residency is not dispositive in light of the circumstances and the other items found in the Apartment. Specifically, the State points to the fact that (1) large men's clothes were found on top of the china cabinet in the dining room, (2) two prescription bottles and an adult probation card bearing Terrell's name were found next to the living room couch with his passport, and (3) a framed photo depicting Terrell was recovered from the living room.

¶ 20    In support of its contention, the State draws this court's attention to the decision in *People v. Cunningham*, 309 Ill. App. 3d 824 (1999). In that case, the police arrested the defendant at a tavern and later returned him to his purported residence. *Id.* at 826. The police unlocked the home, using a key from the defendant's key ring. *Id.* Once in the home, the police used another key, taken from defendant's key ring, to unlock the front bedroom. *Id.* The police discovered men's clothes in the bedroom closet and tools on the floor. *Id.* They also found cocaine, three scales, a mixing bowl, a box of ammunition, and the defendant's inmate identification card. *Id.* While searching the defendant, the police also found packets of cocaine in his shoes and an Illinois driver's license with the address of the purported residence. *Id.* The defendant also

gave the same address to his parole officer and the arresting officer, in addition to having mail delivered to the purported residence. *Id.* at 828. Consequently, the reviewing court found the evidence sufficient to support defendant's conviction. *Id.*

¶ 21 Unlike in *Cunningham*, the trial court in this case was not presented with a plethora of evidence tying Terrell to either the Apartment or to the hidden contraband. First, the pat-down search of Terrell uncovered no contraband or drug paraphernalia tying him to any of the items discovered in the hallway closet trap. See *In re K.A.*, 291 Ill. App. 3d 1, 8 (1997); see also *People v. Minkin*, 133 Ill. App. 2d 549, 551 (1971) (reversing conviction of unlawful possession of narcotic drugs where, *inter alia*, no contraband was found on defendant's person). Second, Terrell did not have a key to the Apartment which, because of the rear door barricade, could only be entered by unlocking the front door and the scissor gate equipped with the large padlock. See *In re K.A.*, 291 Ill. App. 3d at 7 (noting defendant did not have key to the apartment and had to be let inside by another occupant); see also *People v. Ray*, 232 Ill. App. 3d 459, 462-63 (1992) (noting that the only person who had a key to the residence was the codefendant rather than the defendant). On the contrary, it was the lessee, Edward McDaniel, who answered the door and attempted to unlock the scissor gate for the police. See *Fernandez*, 2016 IL App (1st) 141667, ¶ 21 (finding the presence of an unidentified man on the premises at the time the police executed the search warrant weighs against a finding that defendant maintained control over the premises).

¶ 22 Third, the evidence supporting the *Cunningham* court's conclusion that the defendant resided at the address where the contraband was discovered was substantial and uncontroverted. See *Cunningham*, 309 Ill. App. 3d at 828. In *Cunningham*, the defendant's mail was delivered to the residence where the contraband was found. *Id.* Moreover, the residence's address was listed on defendant's driver's license, and the defendant provided the same address to his arresting officer and to his parole officer. *Id.* Here, the owner of the Apartment testified that he did not know who Terrell was, and none of the addresses listed on any of the evidence matched the Apartment's address. The trial court noted that the pill bottles contained different addresses, and the certified vehicle record also listed a separate Chicago address than that of the Apartment. *People v. Moore*, 2015 IL App (1st) 140051, ¶ 28 (taking into consideration evidence presented at trial that defendant did not live at the house).

¶ 23 In further support of its position, the State cites the decisions in *People v. Givens*, 237 Ill. 2d 311 (2010), and *People v.* Walton, 221 Ill. App. 3d 782 (1991); however, like *Cunningham*, the facts in those cases are distinguishable from the facts in the case before this court. In *Givens*, the Illinois Supreme Court noted that the arresting officers found the defendant and her boyfriend lying in a bed located in the sole bedroom of an apartment. *Givens*, 237 Ill. 2d at 317. In plain view, the officers observed a clear plastic bag containing crack cocaine on top of a nightstand near the bed and within arm's reach of the couple. *Id.* The supreme court found the evidence established that the defendant had joint possession of the drugs, and the court stated: "In [*People v. Schmalz*, 194 Ill. 2d 75 (2000)], the illegal drugs were within a short distance of defendant, while in the instant case, the drugs were on a nightstand within a short distance of the bed in which defendant was lying. A nightstand in a bedroom is a place where it could reasonably be expected that a couple staying as overnight guests would place their valuable personal items." *Givens*, 237 Ill. 2d at 338.

¶ 24 Similarly, the reviewing court in *Walton* found defendant to be in joint possession of cocaine, even though her codefendant claimed ownership of the drugs. *Walton*, 221 Ill. App.

3d at 784-87. In *Walton*, the defendants fled by car from the police and subsequently crashed the vehicle. The driver stumbled back to the vehicle and retrieved a sealed package that was leaking white powder. *Id.* at 783. The white powder was cocaine, and it was later established that it was stashed behind the driver's seat. *Id.* The car belonged to the defendant, who was a passenger at the time of the crash. *Id.* After patting down the defendant, the police found 96 plastic bags and a gram scale. *Id.* at 784. In finding the evidence sufficiently established constructive possession, the reviewing court noted that the car belonged to the defendant, and "her possession of the paraphernalia used in the distribution of narcotics was circumstantial evidence which provided the necessary corroboration." *Id.* at 787.

¶ 25        Contrary to the facts in both *Givens* and *Walton*, the record before this court demonstrates that no contraband or paraphernalia were discovered on Terrell's person, in his pickup truck, or in plain view inside the Apartment; all of the contraband was discovered hidden in the ceiling trap in the hallway closet. See *In re K.A.*, 291 Ill. App. 3d at 7 (noting narcotics were not in plain sight and were concealed). Officer Bedoy testified that he searched the entire Apartment and found nothing in either of the two bedrooms, the bathroom, or the kitchen evidencing Terrell inhabited the Apartment. None of Terrell's property was found in the same room as the contraband. Clothes were found in the bedrooms and the hallway closet, but they were also never linked to Terrell. Although the trial court noted that Terrell wore a 4XL department of corrections jumpsuit, and Officer Pacelli testified that the clothing found on top of the dining room china cabinet was larger than would fit him, this clothing was not found next to or in the same room as the contraband, and neither were the prescription bottles, the passport, the probation card, or the photograph. See *People v. Moore*, 2015 IL App (1st) 140051, ¶ 25 (noting contraband was not recovered from the area where police found the male clothing and mail addressed to the defendant).

¶ 26        Agent Weismantel discovered Terrell sitting in his empty pickup truck across the street from the Apartment, rather than within arm's reach of contraband (*Givens*) or inside a car containing drugs and drug paraphernalia (*Walton*). See *Ray*, 232 Ill. App. 3d at 462-63 (reversing convictions based upon constructive possession where defendants found sitting in living room on couch 18 inches from handgun, United States currency, and drugs). Notwithstanding these distinctions, the State contends that Terrell's presence across the street from the Apartment, sitting inside his truck equipped with a hidden compartment, supports the conclusion that Terrell resided in the Apartment. However, reviewing courts have made it clear that mere presence in the vicinity or access to the area in which contraband is found is insufficient to establish constructive possession. See *People v. Sams*, 2013 IL App (1st) 121431, ¶ 13; *People v. Macias*, 299 Ill. App. 3d 480, 487 (1998); *People v. Rangel*, 163 Ill. App. 3d 730, 739 (1987).

¶ 27        At trial, the State introduced evidence showing Terrell purchased the pickup truck on June 6, 2010, as well as evidence that, at the time of his arrest, he was serving 24 months' probation for his September 10, 2012, possession of a controlled substance conviction. The State elicited Officer Bedoy's testimony that he conducted a search of the truck's hidden compartment, and he opined that the trap was similar to the one in the Apartment. He testified that both traps were made from common components sold at electronics and auto stores. Bedoy's search of the truck's hidden compartment revealed no drugs, weapons, or paraphernalia; the trap was completely empty. The State presented no physical evidence indicating anything had been in the truck's hidden compartment nor any physical evidence tying Terrell to the seven guns,

eight boxes of ammunition, digital scales, mixing containers, or bags of drugs. See *Sams*, 2013 IL App (1st) 121431, ¶ 13 (finding evidence insufficient to sustain a conviction for constructive possession of the gun where, *inter alia*, no physical evidence connected defendant to the gun); see also *Lawton*, 253 Ill. App. 3d at 148 (sustaining conviction where field test showed presence of cocaine on defendant's hands connecting him to the cocaine inside the apartment); see also *People v. Bond*, 205 Ill. App. 3d 515, 517 (1990) (defendant's fingerprints were found on a bottle of a substance used to dilute cocaine). As a result, we find the connection between the hallway closet trap and the empty hidden compartment in Terrell's truck to be tenuous at best. See *Fernandez*, 2016 IL App (1st) 141667, ¶ 23 (finding the discovery of defendant's passport, insurance card, framed pictures of defendant, men's clothing, and a .38-caliber gun in the bedroom of the house bore a tenuous relationship to, *inter alia*, the .38-caliber bullets found in the garage).

¶ 28        In *Ray*, 232 Ill. App. 3d 459, and *Fernandez*, 2016 IL App (1st) 141667, both of which defendant cites in his brief, the defendants' convictions were reversed in the face of stronger evidence of constructive possession than was presented here. In *Ray*, police recovered cocaine, cash, and drug paraphernalia from the apartment living room where the three defendants were sitting. *Ray*, 232 Ill. App. 3d at 460-61. Despite the defendants' seated positions within a few feet of the contraband, the appellate court reversed their convictions for cocaine possession, noting the only evidence connecting them to the apartment was a six-month-old cable TV bill in the name of one defendant. *Id.* at 463.

¶ 29        Similarly, in *Fernandez* the police arrested defendant after he fled. The police recovered heroin from his person and from within his car. *Fernandez*, 2016 IL App (1st) 141667, ¶ 8. The police also recovered a set of keys from defendant, and subsequently executed a search warrant of the home the keys unlocked. *Id.* ¶¶ 9-10. The search of the home revealed a handgun under the mattress in a bedroom. *Id.* ¶ 11. In the same bedroom, officers found the defendant's passport and insurance cards, as well as framed pictures of defendant and the woman with whom he was driving on the day of his arrest. *Id.* The closet held both men's and women's clothes, and there were additional framed pictures of the defendant with the same woman hanging on the wall in the living room. *Id.* Notwithstanding this evidence, the reviewing court reversed defendant's conviction, noting that the evidence did not link him to the home's address and that the hidden location of the gun was a factor creating reasonable doubt as to defendant's knowledge of the presence of the gun. *Id.* ¶¶ 19-22.

¶ 30        Assuming *arguendo*—due to the presence of his passport, the prescription bottles, the adult probation card, the large men's clothes, and the framed picture in the living and dining room—that Terrell had some connection with the residence, the fact that the contraband was concealed in a compartment in the hallway closet undercuts the inference that he had knowledge of its existence. See, *e.g.*, *id.* ¶ 24 (handgun was found hidden under the mattress in the bedroom and other contraband was found under the hood of a van in a detached garage); *Maldonado*, 2015 IL App (1st) 131874, ¶ 41 (drugs were hidden in a statue on the bedside table); *Moore*, 2015 IL App (1st) 140051, ¶ 25 (contraband was hidden in a desk drawer); *In re K.A.*, 291 Ill. App. 3d at 7 (narcotics were hidden under a McDonald's box in a hole in the closet); *People v. Adams*, 242 Ill. App. 3d 830, 831 (1993) (cocaine was hidden in a cabinet under the bathroom sink and in the freezer). On this point, *Maldonado*, 2015 IL App (1st) 131874, is instructive. The reviewing court reversed the defendant's conviction for possession of drugs, in part, because despite the fact that mail addressed to him was found on the premises,

the drugs recovered were hidden in a statue. *Id.* ¶ 41. The reviewing court reasoned that even if the mail established the defendant's control over the premises (which the reviewing court determined it did not), the fact that the contraband was hidden, coupled with the State's failure to prove that the defendant was ever inside the residence, precluded a finding that the defendant had knowledge of the drugs. *Id.* Consistent with the reasoning in *Maldonado*, the reviewing court in *Fernandez* reached the same conclusion. See *Fernandez*, 2016 IL App (1st) 141667, ¶¶ 9-11.

¶ 31 Similarly, in the case at bar, the hidden location of the contraband and the State's failure to prove that Terrell ever entered the home creates a reasonable doubt as to Terrell's knowledge of the contraband in the hallway closet trap. Even when viewed in the light most favorable to the prosecution, the evidence presented at trial does not support a finding that defendant committed the essential elements of the crime beyond a reasonable doubt.

¶ 32                                        CONCLUSION

¶ 33 Accordingly, Terrell's conviction for possession of a controlled substance with intent to deliver, possession of cannabis with intent to deliver, and eleven convictions for unlawful possession of a weapon by a felon are reversed. Given this disposition, we need not address defendant's contention on appeal relating to the admission of the probation card or Terrell's allegations of ineffective assistance of counsel.

¶ 34 Reversed.