2021 IL App (1st) 192016-U

No. 1-19-2016

Order filed November 18, 2021

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 7977 |
| | ) | |
| DARRYL EDWARDS, | ) | Honorable |
| | ) | Carol M. Howard, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court.
Presiding Justice Reyes and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1     *Held*:  Sufficient evidence supported defendant's conviction for possessing a controlled
        substance with intent to deliver.

¶ 2     Following a bench trial, defendant Darryl Edwards was found guilty of possessing a

controlled substance, heroin, with intent to deliver (720 ILCS 570/401(a)(1)(A) (West 2018)) and

sentenced to six years' imprisonment. On appeal, Edwards argues that the State failed to prove beyond a reasonable doubt that he possessed the heroin. We affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4      Edwards was charged by information with knowingly possessing, with intent to deliver, between 15 and 100 grams of heroin (count I) and less than 5 grams of methamphetamine (count II).

¶ 5      At trial, Chicago police officer Alex Kulisek testified that he participated in a narcotics investigation on May 2, 2018. That day, in the police station, Kulisek used a computer to remotely control a "pod" camera and, through the video feed, surveil an apartment building on the 1300 block of North Kildare Avenue.

¶ 6      Around 3 or 3:30 p.m., Edwards, whom Kulisek identified in court, exited the apartment building and unlocked a mailbox affixed to the building. He walked around the area, briefly reentered the building, exited, and walked around again. Then, he entered the driver's side of a dark Chevy Impala and drove away. No one else was in the vehicle. The vehicle returned after 6 p.m. and entered the apartment building's driveway. Edwards exited the passenger side. Kulisek and other police officers proceeded to the building to execute a search warrant[2], and Edwards was outside the vehicle when they arrived.

¶ 7      The State published portions of the footage, which is in the record on appeal. The video's playback meter shows the time of day. The camera films from an elevated vantage point down and

_____

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

[2]It is unclear from the record whether the search warrant was related to what Officer Kulisek viewed on the pod camera that day or was based upon some unrelated event or other information.

across the street from the building and moves to follow Edwards. Just before 3:30 p.m., Edwards exits the apartment building and unlocks a mailbox affixed to the building. He walks away from the building for several minutes, then returns and reenters through the same door, which is unlocked. He again exits the building around 3:42 p.m. and remains in the area. Around 4:20 p.m., Edwards enters a black vehicle parked across the street from the building. Its front lights activate, and Edwards drives away. Around 6:06 p.m., the vehicle returns, parks in the apartment building's driveway, and Edwards exits the vehicle's passenger side.

¶ 8    On cross-examination, Kulisek testified that Edwards never reentered the building after he exited around 3:42 p.m.

¶ 9    Chicago police sergeant John Sandoval testified that, around 6:24 p.m., he helped execute the search warrant. Sandoval removed keys from the ignition of a black Chevy and used them to access the building and the second-floor apartment that was the subject of the search warrant. Following the search, Edwards was arrested, and Sandoval's custodial search of Edwards uncovered $924 cash. On cross-examination, Sandoval testified that, when he entered the two-bedroom apartment, an adult male was in bed in one of the apartment's bedrooms.

¶ 10    Chicago police officer Christian Perez testified that he entered the apartment to collect evidence and take photographs. The apartment consisted of a living room, with a bedroom attached, a kitchen to the right of the living room, a bathroom, and a second bedroom—which the man in bed was occupying—off the kitchen's left side.

¶ 11    The living room contained a large television stand which resembled "a china cabinet where the middle was cut out," where a flat-screen television stood. Officers discovered a scale in a glass cabinet on the lower left side of the stand, and pills on top of the stand. A basket on top of the

stand contained documents bearing Edwards's name. In a space behind the television, officers discovered another scale, and a plate with white powder and a credit card.

¶ 12    At trial, Perez identified a Com Ed bill, the credit card, the white powder, and the plate. He further identified photographs of the bill, the pills, the plate with powder and the credit card, and the scales. The Com Ed bill, addressed to Edwards at the subject apartment address, was dated April 9, 2018, and the credit card bore Edwards's name. The photographs and Com Ed bill are included in the record on appeal.

¶ 13    On cross-examination, Perez testified that other officers entered the apartment before him and directed him to the items he recovered. Both bedrooms contained personal effects such as clothes and toiletries. Perez photographed the plate with the credit card and powder after moving it front of the television. He also moved the scales before photographing them.

¶ 14    The State entered stipulations that Perez would testify he inventoried the pills, another officer would testify he re-inventoried the plate with suspect narcotics and the credit card, and a forensic scientist would testify that the pills were positive for 0.6 grams of methamphetamine and the powder was positive for 19 grams of heroin.

¶ 15    Following closing arguments, the court found Edwards guilty of possessing heroin with intent to deliver (count I) and not guilty of possessing methamphetamine with intent to deliver (count II). The court noted that the credit card found on top of the heroin would expire in April 2020 and bore Edwards's name, although the card was unsigned and the court therefore did not know if it had been activated. The court further noted that the card had "a lot of brown powder on it," and appeared to have been used to "separate or cut" the drugs.

¶ 16    The court denied Edwards's posttrial motions. Following the sentencing hearing, the court imposed six years' imprisonment. The record does not reflect if Edwards filed a motion to reconsider his sentence.

¶ 17                                    II. ANALYSIS

¶ 18    Edwards appeals, contending that the State failed to prove beyond a reasonable doubt that he possessed the heroin. Edwards argues that the evidence was insufficient to establish that he controlled the location where the heroin was found, as he was absent for nearly three hours before its discovery and another adult was alone in the apartment. Edwards further argues that there was insufficient evidence he knew of the heroin, as it was hidden in a common space, and his credit card was unsigned and in the apartment while he was gone. Edwards also notes that he was found not guilty of possessing the methamphetamine which was discovered on top of the television stand in the living room of the apartment.

¶ 19    When a defendant challenges the sufficiency of the evidence, we consider whether, "viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Internal quotation marks omitted.) *People v. Belknap*, 2014 IL 117094, ¶ 67. We draw all reasonable inferences in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42. It is the factfinder's responsibility to weigh the evidence and draw reasonable inferences from basic facts to ultimate facts, and a reviewing court may not substitute its judgment for the factfinder's on issues involving the weight of the evidence or the witnesses' credibility. *People v. Brown*, 2013 IL 114196, ¶ 48. The factfinder need not disregard inferences which flow normally from the evidence, nor search out all possible explanations consistent with innocence and raise them to a reasonable doubt. *In re Jonathan C.B.*,

2011 IL 107750, ¶ 60. We will reverse a conviction only where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. *Belknap*, 2014 IL 117094, ¶ 67.

¶ 20    Edwards was found guilty of knowingly possessing heroin with intent to deliver. 720 ILCS 570/401(a)(1)(A) (West 2018). Edwards challenges the element of possession.

¶ 21    Knowing possession may be actual or constructive. *People v. Brown*, 327 Ill. App. 3d 816, 824 (2002). To prove constructive possession, as here, the State must establish that the defendant had knowledge of the contraband's presence and exercised immediate and exclusive control over the area where the contraband was found. *People v. Terrell*, 2017 IL App (1st) 142726, ¶ 18. Constructive possession is often established entirely by circumstantial evidence. *Id.*

¶ 22    Control is established where the defendant has the intent and capability to maintain control and dominion over contraband, even without personal present dominion over it. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. Proof that a defendant controlled the premises where contraband is found creates an inference of knowledge and possession, and habitation in the premises may be sufficient evidence of control to establish constructive possession. *People v. Jackson*, 2019 IL App (1st) 161745, ¶ 27. "Evidence of residency or habitation often takes the form of rent receipts, utility bills, or mail." *Terrell*, 2017 IL App (1st) 142726, ¶ 19. Knowledge may be established by the defendant's acts, declarations, or conduct from which it may be inferred that he knew the contraband existed where it was found. *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 40.

¶ 23    Knowledge and possession are factual issues on which we will not disturb the factfinder's conclusions unless the evidence is "so unbelievable, improbable, or palpably contrary to the verdict that it creates a reasonable doubt of the defendant's guilt." (Internal quotation marks omitted.)

*People v. McCurine*, 2019 IL App (1st) 160817, ¶ 25. The trier of fact may rely on inferences of knowledge and possession to sustain a conviction. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). "Constructive possession is not diminished by evidence of others' access to contraband." *Jackson*, 2019 IL App (1st) 161745, ¶ 27 (citing *People v. Givens*, 237 Ill. 2d 311, 338 (2010)); see also *People v. Tates*, 2016 IL App (1st) 140619, ¶ 25 (possession may be joint, as when multiple individuals have immediate, exclusive control of contraband or the intention and power to exercise control).

¶ 24   Here, a rational trier of fact could conclude that Edwards had constructive possession of the heroin. Through the pod camera, Kulisek observed Edwards enter and exit the apartment building, and unlock a mailbox attached to the building, on the day the search warrant was executed. Edwards last exited the building just after 3:42 p.m., he drove away around 4:20 p.m., and he returned as a passenger in the same vehicle around 6:06 p.m. The vehicle parked in the building's driveway, and Edwards was standing outside the building when officers arrived around 6:24 p.m. to execute the search warrant. Sandoval accessed the building and apartment with the keys from the vehicle's ignition. Inside the apartment, officers recovered a Com Ed bill, bearing Edwards's name and the apartment's address, which was dated April 9, 2018. Additionally, Perez observed other documents bearing Edwards's name. The apartment had two bedrooms that each contained clothing and personal effects. The heroin was discovered on a plate behind the television, along with a credit card in Edwards's name that would expire in April 2020. As Edwards (1) was seen exiting and entering the apartment building and accessing the mailbox, (2) the keys from the vehicle he drove opened the door to the apartment, (3) an electricity bill addressed to him was found therein, and (4) his credit card was on the plate with heroin, the evidence was sufficient

for a factfinder to conclude that Edwards controlled the apartment and the area where the heroin was found, and knew of the heroin's presence.

¶ 25 Contending that the State did not prove he controlled the apartment, Edwards compares his case to *Maldonado*. There, officers searched a home and discovered several boxes of ammunition, a box with a scale and $1500, and heroin hidden in a statue. *Maldonado*, 2015 IL App (1st) 131874, ¶ 3. No one was home before, during, or after the search. *Id.* Officers recovered (1) a mass marketing mailer addressed to the defendant at the address, (2) an unopened envelope from a bank which was addressed to the defendant and his wife at the address, and (3) a delivery receipt which (a) depicted the defendant's name as the purchaser, (b) listed the house's address as the purchaser's address, and (c) was signed by defendant's wife's as receiver. *Id.* ¶¶ 7, 28.

¶ 26 The defendant appealed his convictions for possessing the contraband. *Id.* ¶ 17. We found that the mail and delivery receipt were insufficient to establish beyond a reasonable doubt that the defendant controlled the home—and, therefore, the contraband—as he was absent during the search, never admitted his residency, was never seen inside the location, and there were no other indicia of his residency. *Id.* ¶¶ 34, 37. Although it was "arguabl[e]" that the defendant controlled the premises (*id.* ¶ 41), we stated:

> "Numerous reported decisions reference mail as part of the evidence used to support an inference that the defendant controlled the location where the contraband was recovered regardless of whether the defendant was present at the time of the seizure. While it is clear from existing case law that mail addressed to a defendant found where contraband is recovered may be sufficient to allow an inference of residency, and thereby control, we will not draw the same inference when a defendant is not present during the execution of a

search warrant and other indicia of residency or an admission of residency is not shown." *Id.* ¶ 29.

¶ 27 Here, officers recovered a Com Ed bill addressed to Edwards at the residence's address, dated one month prior. See *Jackson*, 2019 IL App (1st) 161745, ¶ 40 (distinguishing utility bills from the "junk mail" in *Maldonado*). While Edwards was not inside the apartment when the search occurred, the pod camera recorded him exiting and entering the building a few hours before the search, unlocking a mailbox, driving away, and returning as a passenger in the same vehicle. When officers arrived, Edwards was outside the vehicle, which was parked in the building's driveway, and officers accessed the building and apartment with keys from the vehicle's ignition. Perez testified that a basket on the television stand contained other documents bearing Edwards's name, and an unexpired credit card with Edwards's name was on the plate with the heroin behind the television. Thus, other indicia of residency in addition to the Com Ed bill established Edwards's control of the apartment. Moreover, although another man was in the apartment, we noted in *Maldonado* that it is "settled law" that constructive possession may be established through joint possession or when others have access to the contraband. *Maldonado*, 2015 IL App (1st) 131874, ¶ 43.

¶ 28 Similarly distinguishable is *People v. Fernandez*, 2016 IL App (1st) 141667, where the defendant had keys to a residence where officers recovered a firearm hidden under a mattress in a bedroom and more contraband in the garage. *Fernandez*, 2016 IL App (1st) 141667, ¶¶ 11-12. The bedroom where the firearm was found also contained the defendant's photographs and a dresser, on top of which was the defendant's insurance card, and which had a drawer holding the defendant's passport. *Id.* ¶¶ 11, 20. More photographs of the defendant hung in the living room.

*Id.* ¶ 11. However, no bills or other mail connected the defendant to the residence, the passport and insurance card had no address, and evidence showed that he received mail elsewhere. *Id.* ¶¶ 11, 19. An unidentified man was in the residence during the search, and no evidence placed the defendant in the residence at any time. *Id.* ¶¶ 10, 21-22.

¶ 29    Here, the Com Ed bill was addressed to Edwards at the apartment, he was in the building the day of the search and unlocked a mailbox affixed to the building, the keys from a vehicle he drove accessed the building and apartment, and no evidence showed that he received mail elsewhere. Thus, we cannot say that no rational factfinder could find that Edwards controlled the apartment. Edwards's contentions to the contrary would require us to reweigh the evidence, a responsibility reserved for the factfinder. *Brown*, 2013 IL 114196, ¶ 48.

¶ 30    The State also presented evidence that Edwards controlled the area where the heroin was found and knew of its presence. While the heroin was on a plate hidden behind the television and the trial court found Edwards not guilty of possessing the methamphetamine on the television stand, Edwards's credit card was on the plate of heroin. Edwards notes the credit card was unsigned and remained in the apartment when he left, positing that he did not use the credit card and it is therefore insufficient to connect him to the heroin. However, that someone else may have placed Edwards's credit card on a plate of heroin is a possible explanation of innocence that the trial court was not required to raise to a reasonable doubt. *In re Jonathan C.B.*, 2011 IL 107750, ¶ 60. Given the evidence that Edwards controlled the premises, the presence of his credit card on a plate of heroin creates a reasonable inference that he controlled the area where the heroin was found and thereby knew of its presence. See *Jackson* 2019 IL App (1st) 161745, ¶ 27 (proof that a defendant

controls the premises creates an inference of knowledge of possession); see also *Lloyd*, 2013 IL 113510, ¶ 42 (reviewing court must draw all reasonable inferences in favor of the State).

¶ 31    In so holding, we reject Edwards's comparisons to *Terrell*, 2017 IL App (1st) 142726,  and *People v. Zentz*, 26 Ill. App. 3d 265 (1975). In *Terrell*, officers discovered the defendant's passport, probation card, prescription bottles, and photograph in the living room of a residence. *Terrell*, 2017 IL App (1st) 142726, ¶¶ 5, 7. Officers also recovered contraband in a hidden compartment in a hallway closet. *Id.* ¶¶ 8-9. We concluded that "the hidden location of the contraband and the State's failure to prove that [the defendant] ever entered the home" created a reasonable doubt of his knowledge of the contraband. *Id.* ¶ 31. Here, though, the evidence showed Edwards was in the building on the day of the search, and a credit card in his name was on the plate of heroin, which supports the inference that he knew of the heroin.

¶ 32    In *Zentz*, officers recovered a shotgun in the trunk of a vehicle parked near a tavern where the defendant was arrested, along with credit cards and tax forms bearing the defendant's name. *Zentz*, 26 Ill. App. 3d at 266. A witness further testified that he had chauffeured the defendant in a similar vehicle months before, and the defendant always possessed a similar shotgun which he sometimes placed in the trunk. *Id.* at 266-67. On appeal, we concluded that the State did not prove the defendant possessed the shotgun because no evidence showed he owned, used, or drove the vehicle the day the shotgun was discovered, and officers did not recover from the defendant a key to the vehicle. *Id.* at 267.

¶ 33    Edwards argues that, likewise, his credit card does not establish his knowledge of the heroin. However, while no other evidence linked the defendant in *Zentz* to the vehicle, the State here presented sufficient evidence linking Edwards to the apartment where the heroin was found

to establish his control. A rational factfinder could therefore infer from the presence of Edwards's credit card that he knew of the heroin. Thus, viewed in the light most favorable to the State, the evidence was sufficient for a rational trier of fact to conclude that Edwards constructively possessed the heroin.

¶ 34                                III. CONCLUSION

¶ 35    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 36    Affirmed.

¶ 37