2025 IL App (4th) 241297-U

NO. 4-24-1297

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

FILED
September 15, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Peoria County |
| CHEMARE L. IRBY, | ) | No. 22CF664 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Paul P. Gilfillan, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Lannerd and DeArmond concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the evidence was sufficient for a fact finder
to reasonably conclude defendant was guilty beyond a reasonable doubt of
unlawful possession of a weapon by a felon.

¶ 2    Defendant, Chemare L. Irby, was convicted following a bench trial of unlawful

possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2022)). On appeal, he argues the

evidence was insufficient to convict him of the offense. We affirm.

¶ 3    I. BACKGROUND

¶ 4    In August 2022, defendant was charged by information with unlawful possession

of a weapon by a felon for knowingly possessing a handgun after having been previously

convicted of residential burglary in Peoria County case No. 11-CF-829 (*id.*). He was

subsequently indicted by a grand jury for said offense in September 2022. Defendant waived a

jury trial, and the matter proceeded to a bench trial in July 2024.

¶ 5                                    A. Bench Trial

¶ 6          Prior to testimony, defendant stipulated to having been convicted of a previous forcible felony for residential burglary in Peoria County case No. 11-CF-829.

¶ 7          Brian Moore testified he was working as a police officer on August 18, 2022, when he observed defendant walking and noticed what he believed was "an extended magazine of a handgun protruding from [defendant's] left side." He turned his vehicle around, and he said, "[D]efendant began running." Moore exited his vehicle and chased defendant on foot until he lost sight of him for "several minutes." He described hearing a "metallic noise" while giving chase. Moore recalled another officer located defendant underneath a porch at a residence. Moore said the residence "appeared to be abandoned" and the porch was "dilapidated." He recalled another police officer, Matheson Wood, said, "[D]on't reach for that gun." After defendant was detained, Moore recovered a handgun from underneath the porch. Moore stated there was also "garbage and debris" underneath the porch. He stated "a bag" with defendant's identification in it was recovered "[n]ear" the porch. The bag contained a digital scale. Defendant told Moore the bag "might have some X" in it. After Moore told defendant the gun would be swabbed for DNA and fingerprints, defendant told Moore his "fingerprints might be on" the gun.

¶ 8          On cross-examination, Moore said the extended magazine he saw when he initially observed defendant walking was protruding approximately "six to eight" inches from defendant's waistband. He confirmed no extended magazine was recovered at the scene. He agreed the area where the gun was recovered was a "[f]airly high crime area." He also agreed it was "possible" someone would discard an unusable weapon. On redirect examination, Moore stated defendant "indicated" he had discarded "some cannabis."

¶ 9          The trial court then inquired with Moore about the metallic sound he had heard.

Moore said he heard the sound "a couple of minutes" before making contact with defendant. He recalled a metal garbage can on the porch where defendant had been found and believed it may have been defendant who caused the metallic sound from the garbage can. He admitted to the court that his suspicions were "conjecture." On redirect examination, Moore stated what he thought was an extended magazine was defendant's belt.

¶ 10 Officer Wood testified he also observed defendant to have had an extended magazine protruding from his waistband. Wood located defendant hiding underneath the porch. He said the gun recovered was "within arm[']s reach" of defendant. He stated the gun was between the bag that was recovered and defendant. He also noted garbage and debris underneath the porch. After Wood told defendant not to reach for the gun, he said defendant said, "[W]hat gun?" On cross-examination, Wood stated he did not see defendant "throw a firearm" after he began running from police.

¶ 11 Clay Blum testified he was a crime scene investigator for the Peoria Police Department. Blum identified a 9-millimeter handgun recovered from the crime scene. He stated the gun was loaded with live ammunition when it was recovered. He processed the gun for DNA and fingerprints. On cross-examination, he said the gun was inoperable, no DNA identification testing was performed, and no latent fingerprints "appropriate or suitable for use" were identified. On redirect examination, he said no one requested the DNA samples be sent for testing and that the gun's "striker" was broken.

¶ 12 The State rested. Prior to defendant testifying in his own defense, the trial court took judicial notice of defendant's convictions for possession of a controlled substance in Peoria County case Nos. 17-CF-692 and 14-CF-986 for impeachment purposes.

¶ 13 Defendant testified he did not have an "illegal firearm[ ]" in his possession on

August 18, 2022. He stated he ran from police because he knew he had a warrant out for his arrest. He decided to hide under the porch of an abandoned house. He stated he discarded his bag on the west side of the house. He said it was dark underneath the porch and he could feel garbage when he crawled underneath. He recalled an officer telling him to "wait for a second" because there was a gun under the porch. He stated he had "no knowledge" of the gun. He recalled telling police after he was arrested that he had "some drugs" and a scale in the bag, along with his identification. He did not recall being asked about his fingerprints being on the gun that was found. He recalled police saying they were going to "DNA test" the gun, and he stated, "I just told them if it was a gun under there, you guys just made me crawl from up under the porch, so I might have touched a gun, but I didn't know anything about it." He did not recall feeling a gun. On cross-examination, he stated he would have also discarded the drugs and scale in his bag had he been able to.

¶ 14        The defense rested.

¶ 15        The trial court noted defendant's bag near where he was found was significant. The court said defendant's statement to police that his fingerprints might be on the gun was inconsistent with him testifying he did not recall touching the gun. The court said defendant running and discarding evidence was consistent with the gun being found in close proximity to him. The court found defendant had constructive possession of the gun because it was discovered within an arm's length of him. The court recognized the area where defendant was found was a high-crime area where gunshots occurred fairly regularly but said it "stretches the imagination to conclude *** defendant dove under a porch, and coincidentally, there was a gun right next to him." The court noted defendant's prior convictions "could lead one to the conclusion that he admitted to lesser drug crimes with the officers than a weapons crime with the officers which he

knows results in significant[ly] more penalties." The court found the State had proven the elements of the charged offense beyond a reasonable doubt and found defendant guilty.

¶ 16                                B. Posttrial

¶ 17        In September 2024, defendant filed a motion for a new trial, arguing the State failed to prove each element of unlawful possession of a weapon by a felon beyond a reasonable doubt. The parties reconvened in October 2024 for a hearing on defendant's motion. The trial court denied defendant's motion.

¶ 18        The matter proceeded immediately to sentencing. The trial court sentenced defendant to six and a half years' imprisonment.

¶ 19        This appeal followed.

¶ 20                                II. ANALYSIS

¶ 21        On appeal, defendant argues the evidence was insufficient to convict him of unlawful possession of a weapon by a felon.

¶ 22        When examining the sufficiency of the evidence, we must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The trier of fact has the responsibility to assess the witnesses' credibility, weigh their testimony, resolve inconsistencies and conflicts in the evidence, and draw reasonable inferences from the evidence. *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006). We will not reverse a criminal conviction based on insufficient evidence unless the evidence is so unreasonable, improbable, or unsatisfactory that it creates a reasonable doubt of the defendant's guilt. *People v. Murray*, 2019 IL 123289, ¶ 19.

¶ 23    For unlawful possession of a weapon by a felon, the State was required to prove (1) defendant knowingly possessed a firearm and (2) he had previously been convicted of a qualifying felony offense. 720 ILCS 5/24-1.1(a) (West 2022). Given he stipulated to having been convicted of a qualifying felony offense, defendant does not challenge the sufficiency of the evidence to prove the second element. Therefore, we restrict our analysis to whether defendant knowingly possessed a firearm.

¶ 24    Defendant contends the State failed to prove he had constructive possession of the handgun found near him because the State failed to show he both knew the handgun was present and exercised immediate and exclusive control over the area where the handgun was found.

¶ 25    "Constructive possession exists where there is no personal dominion over the contraband, but the defendant has control over the area where the contraband was found." *People v. Terrell*, 2017 IL App (1st) 142726, ¶ 18. " '[T]o establish constructive possession, the State must prove beyond a reasonable doubt that a defendant (1) knew a firearm was present; and (2) exercised immediate and exclusive control over the area where the firearm was found.' " *People v. Wise*, 2021 IL 125392, ¶ 28 (quoting *People v. Sams*, 2013 IL App (1st) 121431, ¶ 10).

¶ 26    Noting his testimony at trial, defendant argues other than Wood's testimony that the handgun was within defendant's reach, there was no probative circumstantial evidence to permit an inference of his knowledge of the gun. We disagree.

¶ 27    The facts at trial show, after defendant was found hiding underneath the porch of an abandoned house, Wood observed a gun within arm's reach of defendant and immediately ordered him not to reach for it. Wood testified that in response to telling defendant not to reach for the gun, defendant said, "[W]hat gun?" Defendant subsequently told Moore his fingerprints might be on the gun. At trial, defendant denied both knowing of the presence of the gun and

physically touching it while he was underneath the porch. He explained he could have touched it because officers had him exit from underneath the porch by passing by or over where the gun was lying on the ground.

¶ 28　　　　The trial court did not appear to find defendant credible in his explanations. As a court of review, we will not retry defendant or substitute our judgment for that of the fact finder regarding witness credibility or the weight of the evidence. *People v. Gray*, 2017 IL 120958, ¶ 35. The court aptly noted the implicit reasonable doubt defendant relied upon at trial is the same on appeal: that defendant, while fleeing from police by hiding underneath the porch of an abandoned house, happened to hide next to a firearm that was already there. On appeal, we are reviewing the evidence in a light most favorable to the prosecution to determine whether *any* rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. We find a reasonable trier of fact could conclude, based on the circumstantial evidence, that defendant both knew the handgun was next to him and exercised immediate and exclusive control over the area where it was found. The facts show he told Moore his fingerprints might have been on the firearm, and it was discovered within arm's reach of where he was hiding. There was no other person in the vicinity of where defendant had been hiding. Constructive possession may be proven entirely through circumstantial evidence. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). Accordingly, we find the court, acting as a fact finder, could reasonably conclude beyond a reasonable doubt defendant had constructive possession of the gun found underneath the porch within arm's reach of him.

¶ 29　　　　　　　　　　　　III. CONCLUSION

¶ 30　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 31　　　　Affirmed.